## ROGERS LOCOMOTIVE AND MACHINE WORKS v. HELM.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF MISSISSIPPI.

No. 134.   Argued January 12, 1875. — Decided February 1, 1875.

To justify a decree for the specific performance of a parol contract for the sale of real estate, the contract sought to be enforced, and its performance on the part of the vendee must be clearly proved; and in this case it is not so proved in several particulars.

THE case is stated in the opinion.

MR. JUSTICE HUNT delivered the opinion of the court.

The complainants, who are also the appellants, filed their bill to enforce the performance of a parol contract for the sale of a house and lot in the city of Jackson.

The alleged contract was made with the Mississippi Manufacturing Company, which has since gone into bankruptcy, and all its rights, by means of the mortgage hereafter to be mentioned and a conveyance from its assignee, are alleged to have become vested in the complainants.

The bill alleges that in the year 1866 Helm was the owner of a

certain lot in Jackson, on which was a brick storehouse; that the house and lot were purchased of Helm by the manufacturing company for the price of $12,000, which sum was to be paid to Helm by one hundred and fifty shares of the stock of said company, for which a certificate was to be issued to him, and on the issuance thereof Helm was to make conveyance of the said lot; that the contract was not in writing, but afterwards, on the 4th of March, 1867, by a letter in writing, Helm acknowledged the receipt of the one hundred and fifty shares, and acknowledged that the lot was to be conveyed by deed to the company (this was contained in Exhibit A, which is set forth at length); that some work was needed to be done upon said house, which Helm agreed to have done for the company and for which the company agreed to pay; that in June, 1867, Helm made out an account of the expenditures for said work, amounting to $919.35, among the items of which was a receipt for taxes on said house and lot for $45, on which was written by direction of Helm a receipt of the same for the Mississippi Manufacturing Company. It is alleged that by reason of these transactions Helm is estopped from denying that the lot is in equity the property of the Manufacturing Company. It is further alleged that in 1867 the company was put in possession of said lot by Helm; that he acted as their agent in renting the same on their account and paying the rents to them. That Helm now repudiates the sale, alleging that the same was verbal only and not binding, whereas it is alleged that the contract had been acknowledged by Helm in writing; that it had been fully performed on the part of the company by paying the purchase money, and partly performed by Helm by giving possession to the company, making improvements thereon on their account, and receiving payment therefor from them.

It is further alleged that in 1869 the company, being indebted to the complainants in a large sum, executed to them a mortgage of the premises before referred to; that the company became bankrupt, and for a valuable consideration the assignee sold and conveyed to the complainants all his right and interest in the property.

The allegations of the bill respecting the terms of the contract and the alleged performance are denied in the answer, and a certain other contract, quite different from the one set up in the bill, is stated to have constituted the understanding between the parties.

To justify a decree for the specific performance of a parol contract for the sale of real estate, the contract ought to be enforced

and its performance on the part of the vendee must be clearly proved. Omitting the consideration of the question whether possession by the vendee in such a case is a controlling circumstance, omitting also the consideration of the point whether the terms of the alleged contract can be established otherwise than by writing in some form or of some character, we think it cannot be questioned by any one that all the material points of the alleged contract must be proved by some competent evidence and the substantial performance of the conditions undertaken by the vendee must be proved in like manner.

It appears from what has already been stated, that the complainants base their case upon an alleged contract by which Helm agreed to sell to the Manufacturing Company his house and store lot in Jackson, for the sum of $12,000, and that Helm agreed to receive the payment of that sum by a certificate for one hundred and fifty shares of the capital stock of their company, which certificate it is alleged was received and accepted by Helm in satisfaction of that sum.

This involves the specifications following, to wit:

1. The agreed price of $12,000 for the house and lot.

2. A description of the particular house and lot so agreed to be sold.

3. Helm's agreement to accept a certificate of one hundred and fifty shares of the capital stock of the Manufacturing Company in payment of that amount.

4. That he did so receive and accept it.

The answer is at least to be construed as putting in issue each of these allegations and requiring that proof of them be made by the complainants. Taking the evidence and the admissions of the pleadings into account, we may hold that the identity of the house which is the subject of the contract is sufficiently established. On the other points there is a failure of proof.

The complainants allege that the price of the house was $12,000 pure and simple. The answer after denying this statement alleges that so far as there was any understanding, it was to this effect: that Helm was to take not one hundred and fifty shares, but three hundred shares of the manufacturing stock, not at par, but at an agreed value per share; that the company agreed to establish a banking house in said building at Jackson, with a capital of $100,000 and that Helm should be the permanent cashier thereof, at a salary of $2000 per year; that in part payment for the three hundred shares Helm was to fit up the house in question for a

banking house and convey it to the company for that purpose, at an estimate to be ascertained by the parties, and that the balance in payment of the stock should be paid by him in money.

That an agreement to take three hundred shares of stock is different from an agreement to take one hundred and fifty shares; that an agreement to receive one hundred and fifty shares in payment for a banking house is different from an agreement to receive three hundred shares at an agreed value in part payment of the house to be fitted up by the vendor for a banking house, the vendor to be appointed and hold the office of cashier in permanence, at a salary of $2000, and to pay for the balance of the stock in money, are propositions that need not be argued.

How stands the proof as to which of these was the agreement made?

Annexed to the complainants' bill are four exhibits and seventeen vouchers, by which the case is sought to be sustained. None of them, unless it be Exhibit A, has even a tendency to support the complainants' view of the case rather than the defendant's. They are all equally consistent with either theory. They show that each party understood that the Manufacturing Company had an interest in the Jackson house, and that the defendant was making expenditures thereon and receiving rent therefrom, for which an account was expected by the company. This would be equally the case whether the house was sold upon a simple agreement to pay $12,000 for it in stock, or whether it was connected with the other conditions claimed to exist by the defendant. The parties were then acting in confidence with each other, and were not particular in their actions or expressions.

Exhibit A is a letter from the defendant acknowledging the receipt of a certificate for one hundred and fifty shares of stock, and sending to the company a statement of their indebtedness to him. Whether the certificate and the indebtedness had any connection with each other it is impossible to say.

The letter proceeds: "You can send me the company's obligation for the amount over and above the $12,000 I pay for the one hundred and fifty shares, and continue to give me acknowledgments of the company's indebtedness as I make other payments." This assumes that the writer has paid $12,000 for the shares, but without specifying the manner, the conditions, or connections, and assumes that the company owes him money, but that he expects to make still other payments for those shares. — "Continue to give me acknowledgments of the company's indebtedness as I make

other payments." The very slight effect to be attributed to this letter must entirely cease when we read the evidence of the president of the Manufacturing Company introduced by the complainants, in which he testifies that "Price of the house was what it cost to build it, which was less than ten thousand dollars," and also "the letters marked A, C and D were written by Helm and refer to the house in controversy, and were in part payment of a contract which was never executed." If the price of the house was less than $10,000, and the one hundred and fifty shares were in part payment only of a contract for its purchase, the allegations that $12,000 was the price, and the one hundred and fifty shares received in full payment, are of course to be disregarded. Not only is the complainants' theory unsustained, but the defendant's theory is greatly aided by the further testimony of the same witness. In answer to the question "What connection had the banking arrangement referred to in the exhibits of Helm with the conveyance and sale of the property in dispute? Were they or not in any way dependent one upon the other, or what were the true facts relative thereto?" he says "the house was sold by Helm and bought by Mississippi Manufacturing Company for the express purpose of a banking house for said company, of which Helm was to be cashier. I think the sale would not have been made, but for the purpose of a banking house. One hundred thousand dollars was to be the capital of the bank, and two thousand dollars to be Helm's salary. The bank was never established."

If the arrangements and conditions were of this character, it is not pretended that they were ever carried out in form or in substance, and it would be far from an equitable disposition of the case to compel Mr. Helm to give a deed of the property. The certificate he offers to return and it no doubt belongs to the bankrupt's estate.

There is no evidence in the record that the title of the assignees in bankruptcy has been conveyed to the complainants. Without such conveyance, or without making them parties defendant, there can be no recovery in this action. The point, however, is not made by the defendant, and we do not base our decision upon it.

For the reasons before stated we are of the opinion that the decree dismissing the bill should be

*Affirmed.*

*Mr. P. Phillips* for appellant.

*Mr. R. M. Corwine* and *Mr. Quinton Corwine* for appellee.