HATTIE A. SALEM, Plaintiff, v. OLAND W. FINNEY, Individually and as Sole Surviving Administrator, etc., of ERWIN C. FRALICK, Deceased, and Others, Defendants.

Supreme Court, Onondaga County, May 1, 1926.

Contracts — validity — action for specific performance of oral agreement between plaintiff and defendant's intestate by which latter agreed to devise certain real estate by will to plaintiff in event she cared for him during his lifetime — evidence shows decedent, after making contract, ceased to pay board and was cared for and nursed by plaintiff over period of nine years — contract not void under Statute of Frauds (Real Prop. Law, § 259) — evidence shows existence of contract and " part performance," within meaning of Real Property Law, § 270 — specific performance directed.

In an action for the specific performance of an oral agreement made between plaintiff and defendant's intestate whereby the latter agreed to devise by will to the plaintiff certain real estate in the event plaintiff would care for him during his lifetime, the defense interposed by the defendant that the contract is void under the Statute of Frauds (Real Prop. Law, § 259) for the reason that it is not in writing, cannot be sustained, since the evidence shows that after the

execution of the contract, the existence of which is evidenced by the testimony of two disinterested witnesses, decedent ceased to pay any board to the plaintiff and for nine years and up to the time of his death was boarded, cared for and nursed by plaintiff during frequent illnesses, and that plaintiff paid for repairs and improvements to the property out of her own money and in many respects treated the property as her own. Moreover, good conscience and natural justice call for the enforcement of the agreement.

The fact that the contract was executory does not preclude the plaintiff from the right to specific performance, since there was "part performance" by the plaintiff, within the meaning of section 270 of the Real Property Law, and every act of performance on her part is referable to the contract.

ACTION for the specific performance of an oral agreement claimed to have been made by and between Erwin C. Fralick, now deceased, and the plaintiff, Hattie A. Salem, whereby said Fralick agreed to devise to the plaintiff certain real estate in the city of Syracuse, N. Y., known as 529 Burnet avenue, in consideration of an agreement by the plaintiff to make a home for and support and care for him.

*Denison Richmond* [*William H. Harding* of counsel], for the plaintiff.

*Joseph M. Meatyard,* for the defendants Tappan.

*Ira P. Betts,* for the defendant Finney.

SMITH, J. Erwin C. Fralick died October 24, 1924. No will made by him has been discovered, and it is, therefore, assumed that he died intestate. At the time of his death he held title to the premises described in the complaint and known as 529 Burnet avenue, in the city of Syracuse, N. Y., worth about $4,500, subject to a mortgage of $1,100. He also owned certain other property, of the value of about $7,500. He left him surviving no wife, no children, but a half-brother, Ogden Fralick, of Phoenix, N. Y., and a half-sister, Pernina Tappan, of Detroit, Mich. Said Pernina Tappan died intestate on or about the 2d day of June, 1925, leaving her surviving her children and only heirs at law, the defendants Homer C. Tappan, Nina T. Antis and Lena F. Hunton. The defendant Homer C. Tappan has been duly appointed administrator of the estate of said Pernina Tappan, deceased. Said Ogden Fralick died on or about the 1st day of May, 1925, leaving a last will and testament, duly admitted to probate, whereby he devised and bequeathed his entire estate to the defendant Oland W. Finney and letters testatmentary upon said will have been issued to said Oland W. Finney.

Mr. Fralick had been a widower since 1906. When his wife died he went to live with the plaintiff and her husband at 419 Hawley avenue, Syracuse, N. Y., where he lived until 1911, when he purchased the premises in question, and with the said Salems moved

there, and lived there continuously until the day of his death, at which time he was about sixty-seven years of age. Up to the time of the contract in question, in addition to furnishing the house, he paid board at the rate of five dollars per week to the plaintiff. Mr. Fralick had been for years a constant sufferer from heart trouble, and during periods of sickness he had, prior to the contract in question, been cared for by Mrs. Salem, the plaintiff.

It is the contention of the plaintiff that on an occasion in the early part of June, 1915, in the presence of the said Ogden Fralick, William Dietrich, Jacob Dietrich and of this plaintiff, at a time when Mr. Fralick was about to leave on a trip to California, the contract in question, which was entirely oral, was made, whereby, in consideration of the agreement on the part of Mrs. Salem to board and care for him so long as he should live, he agreed to devise the premises in question to Mrs. Salem. The contract itself was evidenced by the testimony of two disinterested witnesses; was definite as to the parties to it and as to the consideration; both parties to it fully understood its terms; it related to a specific piece of real estate. Mrs. Salem occupied the whole house, excepting the one room set apart for and occupied by Mr. Fralick. She also kept another boarder. After making the contract, Mr. Fralick ceased to pay any board, and for nine years and up to the time of his death was boarded, cared for and nursed by Mrs. Salem during his frequent illnesses. Mrs. Salem paid for repairs and improvements to the property — not large sums, but considerable. Mr. Fralick paid the taxes and the interest on the mortgage up to the time of his death.

A considerable number of wholly disinterested witnesses testified to statements or declarations by Mr. Fralick after the contract, to the effect that the property in question was, or was to be, the property of Mrs. Salem. The contract was fully performed by Mrs. Salem. Mr. Fralick had more than mere board and lodging. He had care. He was nursed in sickness. He had a home. When he made the contract he knew what he was to receive, and the plaintiff was faithful to her promise to the end. Mr. Fralick lived with and was cared for by the Salems for eighteen years. On account of the length of time (nine years) which Mr. Fralick lived after the agreement, and the constant care and attention he received from Mrs. Salem, it is doubtful if the value of the property in question is adequate compensation for the services rendered him by her. It is evident Mr. Fralick was very happy in the home made for him by the Salems.

The balance of Mr. Fralick's property, amounting to about $7,500, went to his half-sister and half-brother, with whom he was

apparently on friendly terms, but who had no claims upon his bounty equal to those of Mrs. Salem. No contention is made by the defendants that the plaintiff did not in every respect fulfill the terms of the contract. The evidence of the making of the contract itself and of its full performance by the plaintiff is clear, convincing, overwhelming and undisputed. The defendants, however, contend that the contract is void under the Statute of Frauds, for the reason that it is not in writing. (Real Prop. Law, art. 8, § 259.)

Agreements to devise real property by will have long been enforced in this State, and in case of failure to perform the agreement specific performance has been decreed. (*Lobdell* v. *Lobdell*, 36 N. Y. 327; *Parsell* v. *Stryker*, 41 id. 480; *Freeman* v. *Freeman*, 43 id. 34; *Winne* v. *Winne*, 166 id. 263; *Taylor* v. *Higgs*, 202 id. 65; *McKeon* v. *Van Slyck*, 223 id. 392.) And it has been the policy of courts of equity, in the exercise of sound judicial discretion, to sustain such agreements, although oral, where the agreement itself was clear, definite and certain, and the circumstances called for the exercise of equitable discretion, and no public policy was contravened. (*Lobdell* v. *Lobdell*, *supra*; *Freeman* v. *Freeman*, *supra*; *Winne* v. *Winne*, *supra*; *Taylor* v. *Higgs*, *supra*; *McKeon* v. *Van Slyck*, *supra*; *Matthews* v. *Matthews*, 62 Hun, 110.)

Cases in which oral agreements of this character have not been enforced are largely those where there has been a failure in the proof of the contract itself, or where it has been evidenced by proof which indicated, not a contract, but declarations of intention on the part of a decedent. In *Gall* v. *Gall* (64 Hun, 600; affd., 138 N. Y. 675) the contract was not established with reasonable certainty. The proof rested entirely upon the declarations of intention on the part of the decedent, and some of these declarations were not in the nature of a present bargain. Many of them were mere declarations of intention. The court said: "It is quite uncertain from this testimony what *precise agreement*, if any, was ever made between the plaintiff and the decedent. If there was any actual agreement between them, it is impossible to say whether the consideration therefor was the change of name, or the care which was to be given to the decedent, or the sacrifice of the California business. Then, too, if an actual agreement on the decedent's part is to be inferred from these declarations, such agreement was uncertain. There was a reservation of the right to make some legacies; and the complaint charges an undertaking ' to *leave the remainder of his estate*, both real and personal,' to the plaintiff. No specific property, it will be observed, but whatever he might happen to have at the time of his death, without even a general statement as to its

extent, character or value. How is it possible, under well-settled rules, to enforce such an agreement were it conclusively established? "

In *Hamlin* v. *Stevens* (177 N. Y. 39) a case in which there was no sufficient evidence justifying a conviction that any contract as claimed by the plaintiff had ever been entered into, the court very properly set up a warning against sustaining such contracts where they were not completely and definitely proved, as follows (p. 47): " Contracts of the character in question have become so frequent in recent years as to cause alarm, and the courts have grown conservative as to the nature of the evidence required to establish them, and in enforcing them, when established, by specific performance. Such contracts are easily fabricated and hard to disprove, because the sole contracting party on one side is always dead when the question arises. They are the natural resort of unscrupulous persons who wish to despoil the estates of decedents. * * * While such contracts are sometimes enforced by the courts, *it is only when they have been established by evidence so strong and clear as to leave no doubt, and when the result of enforcing them would not be inequitable or unjust.*"

In *Winne* v. *Winne* (166 N. Y. 263, 272) the court said: " In cases of this character, where it appears for any reason that the enforcement of an agreement would be unfair, inequitable or unjust, the remedy should be denied. Each case must be governed by its own facts and circumstances, and unless the proof discloses a situation where good conscience and natural justice require the enforcement of the agreement, this relief should not be awarded. * * * While we are of the opinion that specific performance of this contract was properly awarded, this decision is based solely upon the findings of the trial court, and the particular facts and circumstances of this case. Yet, it must not be regarded as an authority for maintaining such an action under different circumstances or upon other proof, as the granting or denial of such relief always rests in the sound discretion of the court, and should be denied unless the agreement is fair and just and its enforcement equitable."

In *McKeon* v. *Van Slyck* (223 N. Y. 392), where the agreement claimed to have been made was oral and to the effect that, if the plaintiff would provide the decedent permanently with a room in her home, and board him and take care of him when he came to the city, he would leave her by his will $25,000, the question considered by the court was as to whether or not the trial justice, in charging the jury, had made an error in his statement of the law when he said that " claims of this kind are looked upon by the

courts with suspicion;" that "every detail of the claim must be brought out and proven by a preponderance of the evidence;" and that "a contract of this kind must be given in all particulars by absolutely disinterested witnesses and established by the clearest and most convincing evidence." These statements in the charge were held to be incorrect, and the court said: "In civil cases a plaintiff is never required to prove his case by more than a preponderance of evidence. This is as true of actions against an executor, founded on claims put forward for the first time after the death of the testator, as it is of other actions. * * * No doubt in determining whether the preponderance exists, the triers of the facts must not forget that death has sealed the lips of the alleged promisor. They may reject evidence in such circumstances which might satisfy them if the promisor were living. They must cast in the balance the evidence offered upon the one side and the opportunities for disproof upon the other. They may, therefore, be properly instructed that to make out a preponderance, the evidence should be clear and convincing. * * * But all these instructions in last analysis are mere counsels of caution. The responsibility of determining whether the evidence is clear and convincing must ultimately rest upon the jury, subject, of course, to the power of the court to set aside their verdict. There is no rule of law that the claimant's contract must be in writing, or even that it must be made out in all substantial particulars by disinterested witnesses. * * * The jury might properly have been instructed that they could reject the testimony though uncontradicted unless they found it clear and convincing. They might even have been instructed that they could in their discretion reject it if it was not corroborated in all substantial particulars by disinterested witnesses. But they could not properly be instructed that such corroboration was essential as a matter of law, or that the law, irrespective of the circumstances, viewed the claim with suspicion."

The proofs in the instant case meet the tests, and "good conscience and natural justice" require the enforcement of this contract. In the light of the foregoing, the recent decision of the Court of Appeals in *Burns* v. *McCormick* (233 N. Y. 230) requires careful consideration. There, the decedent, *so it is said*, told the plaintiffs that, if they gave up their home and business in Andover, N. Y., and boarded and cared for decedent during his life, his house and lot, with its furniture and equipment, would be theirs upon his death. They did as he asked, selling out an interest in a little business in Andover and boarding and tending him until he died, about five months after their coming. The defense was the Statute of Frauds.

I have examined the record in that case, and it fails to show a definite and certain contract. What the consideration to be paid by the plaintiffs was is not clear, nor is the promise made by them definite and certain without reference to the performance. CARDOZO, J., writing says: " We think the defense must be upheld. Not every act of part performance will move a court of equity, though legal remedies are inadequate, to enforce an oral agreement affecting rights in land. *There must be performance ' unequivocally referable ' to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing.    \*    \*    \*    What is done must itself supply the key to what is promised.* It is not enough that what is promised may give significance to what is done. The housekeeper who abandons other prospects of establishment in life and renders service without pay upon the oral promise of her employer to give her a life estate in land, must find her remedy in an action to recover the value of the service    \*    \*    \*. Her conduct, separated from the promise, is not significant of ownership either present or prospective    \*    \*    \*.  On the other hand, the buyer who not only pays the price, but possesses and improves his acre, may have relief in equity without producing a conveyance    \*    \*    \*.  His conduct is itself the symptom of a promise that a conveyance will be made."

In the light of the long course of decisions in this State in cases where the discretion of a court of equity has been exercised through a decree of specific performance of an oral contract to devise real estate, and in the light of which, of course, the opinion in this case must be read, it cannot have been the purpose of the decision of the Court of Appeals in this case to deny the exercise of equitable discretion in a case where, in the circumstances, good conscience and natural justice call for enforcement of a contract definitely proved.

The questions in the instant case are: Was there a contract? Was there an adequate consideration?  Was there performance? Are there any circumstances which raise the occasion for a refusal to exercise equitable discretion?  The decision in *Burns* v. *McCormick* was not intended to set up a standard, the effect of which would be to destroy the exercise of equitable power in contravention of the express provision of said article 8, section 270, of the Real Property Law, which reads: " Nothing contained in this article abridges the powers of courts of equity to compel the specific performance of agreements in cases of part performance."

In *Flanagan* v. *Flanagan* (209 App. Div. 190) the defendant was induced to live with her mother, and reside with her and care for

her during her declining years, and to assume control of her household and business, in consideration of the mother's agreement to give said daughter, by her last will and testament, a specific piece of property for said care and service. The defendant performed her part of the agreement, but the mother failed to perform her part, and left a will by which the defendant was given only an undivided one-half interest in the property in question. That case was decided May 7, 1924, and the court comments upon the case of *Burns* v. *McCormick* (*supra*) and restates the law in accordance with the practice of equity in this State from the earliest times in cases of this character, as follows: " While it is true that parol contracts of this nature should be looked into with the utmost care to the end that unjust claims against deceased persons might not prevail, where as in this case the agreement was established by clear and convincing evidence, most of it being furnished by disinterested witnesses, and the contract has been fully performed by one party, it should be enforced against the other."

In the instant case the consideration was performance on the part of the plaintiff of her part of the contract. But it is said that " not every act of part performance will move a court of equity." That is of course true, unless the performance was the consideration of the contract. It is also said that " there must be performance ' unequivocally referable to the agreement.' " This would bear rather upon the evidence of the existence of the contract than upon the question of the fulfillment of it. Let there once be established a contract which contravenes no sound public policy, which is not unconscionable, which appeals to the conscience of the court and accords with natural justice, the proposition that the performance must be " unequivocally referable to the agreement " becomes of no moment (except as bearing upon the existence of the contract), unless we are prepared to wipe out the doctrine of consideration as being of the essence of a contract. If the intent is where the contract is not shown by competent evidence, clear and convincing, that the mere fact of the performance may not be taken as evidence of the contract unless it is unequivocally referable to the agreement, then the language of the court becomes consonant with the course of the decisions rendered upon this subject.

In *Woolley* v. *Stewart* (222 N. Y. 347), referring to oral agreements affecting real estate, after saying that " the breach of a void agreement is not a fraud or a wrong in law," the court says that a party " may, however, withdraw himself from the policy and defense of the statute, or waive its protection, by inducing or permitting without remonstrance another party to the agreement to do acts, pursuant to and in reliance upon the agreement, to such an extent and

so substantial in quality as to irremediably alter his situation and make the interposition of the statute against performance a fraud. In such a case a court of equity acts upon the principle that not to give effect to those acts would be to allow the party permitting them to use the statute as an instrument defending deception and injustice. The acts must, however, be so clear, certain and definite in their object and design as to refer to a complete and perfect agreement of which they are a part execution — must be unequivocal in their character and must have reference to the carrying out of the agreement. An act which admits of explanation without reference to the alleged oral contract or a contract of the same general nature and purpose is not, in general, admitted to constitute a part performance."

That case was cited with approval in *Burns* v. *McCormick* and throws light upon the interpretation to be placed upon the expressions made therein.

In the instant case, every act of performance was referable unequivocally to the contract, once the contract, independent of the performance, is established. The agreement was that Mr. Fralick, in the event that plaintiff would care for him during his life, would devise a specific piece of property to her by will. It is true that the contract was executory. All such contracts are. The title to the property was to be transferred by will, but the contract was no less binding, and once established according to the standards, excepting for the limitation of the Statute of Frauds as to transfers of real estate, it became as enforcible as if made in writing. The plaintiff was under no obligation to repair this property, or to pay the taxes, or to pay the interest on the mortgage. The property did not belong to her, and would not until she had fully performed her part of the contract, and such performance could not be complete until the death of Mr. Fralick. There are, however, here evidences, taking literally the language used in *Burns* v. *McCormick (supra)*, which are unequivocally referable to the contract. Mrs. Salem treated this property as her own in some respects. She made repairs upon it out of her own money. She had possession of the whole house, excepting one room. She kept a boarder. While these would not be evidence of delivery of possession of the property, they are important circumstances, which are incapable of interpretation, excepting on the basis that the contract existed. Furthermore, after the contract was made, Mr. Fralick ceased to pay board to her, as he had been doing for the nine years previous.

We are not prepared in this State to abolish equitable considerations, and to resort no longer to that great wealth of learning as

expressed in equity jurisprudence, to disregard appeals to conscience and natural justice, to set aside great, fundamental principles of common law, and resort to the mathematical precisions of the civil law, or to eliminate the exercise of established equitable powers to the extent that the Statute of Frauds may be used as a cloak for fraud or gross injustices in cases of this kind. Where as here, every exacting requirement as to proof of contract is met and where the appeal to equity is strong, specific performance should be decreed. At law the plaintiff would fail; it is only through equity that she may secure justice.

The plaintiff is entitled to a decree directing the specific performance of the contract, as prayed for in the complaint, and will prepare proper findings of fact and conclusions of law, to be settled, if not agreed to, upon two days' notice.

Decreed accordingly.