## COLWELL v. FULTON.

(Circuit Court, D. New Jersey. August 27, 1902.)

1. CONTRACT—MONEY—INSTALLMENTS.

Where the payment of installments of money is provided for in an agreement, suit may be brought for them as they accrue during the currency of the agreement.

2. CONTRACT OF SALE—RIGHT TO TERMINATE.

C., in consideration of $193,000, agreed to convey to F. certain land, to transfer shares of stock in a company, and assign a mortgage of $340,000 given by the company, an installment of $15,000 on the consideration to be paid when the deed was delivered and the stock transferred, and $500 a month thereafter to be paid for 10 years on account of interest on the balance of $178,000, F. having the right at any time within the 10 years to pay the $178,000, with interest, when all claim of C. should be relinquished, and it being provided that moneys received from sales or rents should be applied on the purchase price with a release of all claim by C. when the $178,000, with interest, was paid from any source. It was also provided that if F. had to foreclose the mortgage, and bought in the premises, he might execute a mortgage thereon to C. for the balance due, with interest, without personal liability, or end the matter by conveying the premises to C. There was a further provision that, if F. was in default for 30 days, C. could foreclose the mortgage, which was to be reassigned to him as collateral, or he might, on notice, sell it. Held, in an action for the monthly installments of interest, that the contract was not a terminable one, amounting to no more than an option, from which F. could retire at any time.

Demurrer. Action at law to recover monthly installments of $500, alleged to be due from the defendant under the first numbered paragraph of the following agreement:

"Articles of agreement made and entered into this seventeenth day of August, A. D. 1892, between Charles R. Colwell, of the village of Weymouth, in the county of Atlantic, and state of New Jersey, of the one part, and Elisha M. Fulton, of the city, county, and state of New York, of the second part, in the manner following:

"The said party of the first part, in consideration of the sum of one hundred and ninety-three thousand four hundred and forty-two dollars, to be paid to him as hereinafter mentioned, hereby agrees to sell unto the said party of the second part, his heirs and assigns, by a proper deed of conveyance containing a general warranty and the usual full covenants in fee simple, free from all incumbrance, twenty-five hundred acres in lots of about twenty acres each, known as the 'Twenty-Acre Lots' on the plan of farms of the late Weymouth Farm and Agricultural Company, situated near Hammonton, in the county of Atlantic, and state of New Jersey; and to transfer and deliver four thousand shares of the capital stock of the Industrial Land Development Company. And the said party of the second part, on the delivery of the said deed at the time and in the manner hereinafter mentioned, and the said stock, does agree to pay to the said party of the first part the sum of fifteen thousand dollars, the said sum to be paid and taken as a first installment on account of the entire consideration of this agreement. It is understood and agreed that the said deed will be delivered, and the shares of stock transferred, when and as soon as opportunity can be had for a full and complete investigation of the title of the said premises, and the said party of the first part is able to make the title thereto required by this agreement, at the office of Samuel Fulton, in the Bullitt Building, in

¶ 1. See Action, vol. 1, Cent. Dig. § 614.

the city of Philadelphia, when the said sum of fifteen thousand dollars shall be paid by the said party of the second part. And the said party of the first part does also hereby agree to sell, assign, transfer, and set over unto the said party of the second part a second indenture of mortgage, bearing date the 3rd day of September, A. D. 1891, made by the Industrial Land Development Co. to him, the said party of the first part, to secure the payment of $340,000, which said mortgage is recorded in Liber 30 of Mortgages for the county of Atlantic, in the state of New Jersey, at page 303, and upon which said mortgage the said party of the first part does covenant that there is now due and owing the sum of $337,380, with interest thereon from Sept. 3, 1891, together with the lands therein described, and the covenants and stipulations therein contained, and the bond or obligation therein recited, and the money due and to grow due thereon, with the interest, for the consideration, at the time, at the terms, and in the manner following, that is to say:

"First. For the term of ten years beginning on the 3rd day of September next ensuing the date of this agreement the said Fulton shall pay to the said Colwell monthly, on the 3rd day of each and every month, five hundred dollars. Said monthly payments shall be on account of the interest accruing on the said $178,442.

"Second. The said Fulton may at any time within the period of ten years from the date hereof pay to the said Colwell the said sum of $178,442, with interest from the date hereof, or the balance thereof, after deducting all moneys received by the said Colwell on account of said sum as hereinafter provided; and the said Colwell will relinquish any claim he may have for the said bond and mortgage or the said mortgaged lands in case of a foreclosure sale as hereinafter provided, and this agreement shall cease.

"Third. The rate of interest under this agreement shall be six per cent. per annum.

"Fourth. That all payments shall be in cash, or check equal to the cash, without abatement, defalcation, or discount.

"Fifth. That the said Fulton shall at all times during the operation of the terms of this agreement hold the said Colwell harmless from the operation of any mortgage or other liens that now is or that may hereafter be upon or against the lands and premises described in the mortgage hereinbefore mentioned; and this covenant, numbered 'Fifth,' the said Fulton guaranties absolutely, whether such mortgage or lien is a prior or subsequent lien to the mortgage hereby agreed to be conveyed on said lands and premises, or any part thereof.

"Sixth. That so long as the terms, times, payments, conditions, and limitations are observed and executed on the part of and by the said Fulton, the said Colwell, at the request of the said Fulton, shall release portions of the land subject to the lien of said mortgage from the operation thereof. The lands so to be released by the said Colwell upon the request of the said Fulton as aforesaid shall be such, and only such, as is provided for in a certain agreement between these said land companies and the said Colwell bearing date the 3rd day of September, 1891. The proceeds from said releases shall be paid to the said Colwell upon and as part of the principal sum of the above-mentioned consideration.

"Seventh. That all moneys which may be or which may hereafter become due upon any lease of the mortgaged lands or contract made or to be made by the said Fulton with the said the Industrial Land Development Co. for rent, or upon sales of wood, clay, stone, sand, or other product of the said lands, shall, in case it can be so arranged with the said company, be paid to the said Colwell, to be applied by him as well upon the moneys due upon the said mortgage as upon the consideration of this agreement. The said Fulton shall report, when requested so to do by the said Colwell, the amount of wood, clay, stone, sand, or other product of the said mortgaged property; and the said Colwell, or his agents, shall have access at all times to the books of the Industrial Land Development Co., and the firm or company about to lease and operate the paper mills and saw mills at Weymouth upon said lands, or upon any other company or companies that may be formed by the said Fulton under any contract or lease he may make with the Indus-

trial Land Development Co., for the purpose of ascertaining the amount of wood, clay, stone, sand, or other produce of said property which may be sold.

"Eighth. All moneys received by the said Colwell on account of the principal or interest on the said mortgage, or derived from release of the mortgaged lands, from the sales of land in case of a foreclosure of the said mortgage, and the purchase of the mortgaged lands thereunder, as hereinafter provided, and all money received under the provision of the last preceding clause of this agreement, shall be credited as well on account of the principal and interest of the said mortgage as on account of the consideration of $178,442, and the interest thereon, the consideration of this agreement. When and as soon as the said Colwell shall have received on account of the said mortgage, or the said lands in case of foreclosure sale, from any or either of the sources aforesaid, or from any other source, the sum of $178,442, with interest thereon from the date hereof, all interest he may have in the said bond and mortgage or the said lands shall cease, and he shall release to the said Fulton any claim or interest he may have thereto or therein; and from and after the receipt by the said Colwell of the said sum the said Fulton shall be entitled to the said bond and mortgage, or the said lands in case of foreclosure sale, as hereinafter provided, and all moneys due and to become due thereunder.

"Ninth. The said Fulton shall have the right to foreclose the said mortgage at any time in case default shall be made in the payment thereof, under his own direction, in the name of the said Colwell, or otherwise, as may be proper, and by such solicitor or counselor at law as he may employ for that purpose: provided, nevertheless, that he shall assume and pay all the expenses of such foreclosure, and shall agree that, in case at such foreclosure sale the sum of $178,442, or such balance as may be due on the consideration of this agreement, shall not be realized, the said Fulton will buy in the said mortgaged premises, and immediately thereafter convey the same to the said Colwell, or in lieu thereof execute to the said Colwell a mortgage thereon (to be a naked mortgage, and not to involve any personal liability upon the part of the said Fulton) for the consideration of this agreement, or such balance as may remain due thereon after deducting the payments thereon provided for in this agreement, payable at a date thereafter equal to a day ten years from the date of this agreement, and containing the ordinary interest, tax, and insurance clauses; and shall, before entering upon such foreclosure proceedings, execute to the said Colwell a bond in $100,000, with ample surety, conditioned for the faithful performance of the agreement relative to such foreclosure and sale as contained in this clause of this agreement. And in case of said foreclosure, the purchase of said lands thereunder, and the execution of said mortgage, the said lands shall thereafter be treated and considered in the place and stead of the said mortgage, and be otherwise governed by the terms of this agreement. In case he should elect to convey the said lands to said Colwell, this agreement shall be terminated.

"Tenth. As soon as practicable after the execution of this agreement, the said Colwell shall assign to the said Fulton, by a proper deed of assignment for that purpose, the said bond and mortgage, and the said Fulton shall thereupon immediately and contemporaneously reassign the same to the said Colwell as collateral, and under an assignment conditioned for the faithful performance by the said Fulton of his promises and covenants in this agreement contained.

"Tenth A. In the event of a default by the said Fulton of any covenant of this agreement for the space of thirty days, the said Colwell shall have the option either to foreclose said mortgage, or dispose of the same, on demand and notice to the said Fulton, at public sale.

"Eleventh. That this agreement shall be binding upon the heirs, executors, administrators, and assigns of both the parties hereto as fully as though the same had been mentioned and covenanted in each and all the covenants hereinbefore and hereinafter mentioned.

"Twelfth. That for the due performance of all and singular the covenants and agreements aforesaid the said Elisha M. Fulton and Charles R. Colwell do bind themselves, their heirs, executors, and administrators, each, to the other, his heirs, executors, administrators, and assigns, in the sum of one

hundred and seventy-eight thousand and four hundred and forty-two dollars, firmly by these presents; said sum to be a lien upon said bond, mortgage, and shares of stock, and to be considered as liquidated damages.

"In witness whereof the parties to these presents have hereunto interchangeable set their hands and seals the day and year first written above.

"[Signed]                                      Charles R. Colwell.   [Seal.]
                                               "E. M. Fulton.         [Seal.]

"Sealed and delivered in the presence of
     "[Signed] Edward A. Day."

The defendant paid the installments up to March 1, 1894, but no further, and on August 28, 1894, he served the plaintiff with the following notice:

"New York, August 28th, 1894.

"To Chas. R. Colwell, Esq., and Mrs. Laura R. Colwell—Dear Sir and Madam: I no longer desire to become the owner of the indenture of mortgage dated December 3rd, 1891, and made by the Industrial Land Development Co. to Charles R. Colwell, and I therefore hereby notify you that I terminate and retire from the option of purchase contained in the agreement of August. 17, 1892, between Mr. Colwell and myself.

"Truly yours,                                         E. M. Fulton."

The plaintiff answered this with the following letter:

"Weymouth, N. J., August 31, 1894.

"E. M. Fulton, Esq., Mays Landing, N. J.—Dear Sir: For Mrs. Colwell and myself I acknowledge receipt of your letter of August twenty-eighth. Please take notice that you will be held to the strict fulfillment of the contract of August 17, 1892. I am obliged to infer that you wish to withdraw from your outline of a proposition of August 27th, which you requested Mr. Stuart and I to figure on and discuss with you later.

"Very truly,                                          C. R. Colwell."

The agreement and these two notices were set out in the declaration.

R. V. Lindabury and E. A. Day, for the demurrer.

D. J. Pancoast, for plaintiff.

ARCHBALD, District Judge.[1]  According to the agreement which is the basis of this action, Colwell, the plaintiff's testator, in consideration of $193,442, was (1) to convey to the defendant, Fulton, 2,500 acres of land near Hammonton, Atlantic county, N. J.; (2) transfer to him 4,000 shares of the Industrial Land Development Company; and (3) assign and transfer a mortgage of $340,000, given by the said Industrial Land Development Company, on which he guarantied $337,380 to be due.  As the first installment on the entire consideration named, Fulton was to pay $15,000 when the deed for the land was delivered and the shares of stock were transferred to him.  This left $178,442 to be still taken care of, and it is with regard to this that the rest of the agreement is particularly concerned.  Without going over it in detail, I see no special ambiguity in it, nor any great difficulty in construing its different provisions.  It was evidently framed to carry out an arrangement by which Colwell was to turn over to Fulton the several things which he did, for which Fulton was to pay him $15,000 down, and so handle the property that Colwell would realize $178,442 more out of it; Fulton making all that he

_____
[1] Specially assigned.

could over and above that, which was evidently the inducement for him to go into the scheme. The demurrer is based upon the idea that the agreement was a terminable one, amounting to no more than an option, from which Fulton was entitled to retire at any time, and that, having given notice of his intention to do so in his letter of August 28, 1894, which is set out in the declaration, he is no longer liable thereon. There is nothing, in my judgment, in the various provisions which it is claimed sustain this contention, either singly or collectively, to support any such idea. It is averred in the declaration, and is admitted by the demurrer, that the agreement was fully complied with on the part of Colwell. It is therefore to be taken as a fact that Colwell conveyed to Fulton the 2,500 acres of land near Hammonton, and transferred to him the 4,000 shares of the Industrial Land Development Company, as he undertook to do, and further assigned the $340,000 mortgage. All this property is now in the defendant's hands, and, notwithstanding that he has accepted the consideration so furnished by Colwell, which there is no suggestion that he proposes to hand back, he would have us believe that there was to be no continuing reciprocal obligation on his part which he could not throw off at any time. If this is the way the agreement reads, well and good; but it is not to be made to do so by doubtful implication. While it is true that Colwell was paid the $15,000 which he was to get at the outstart, this is distinctly stated to be the first installment on the $193,442, which is declared to be the entire consideration due him, and the rest of the agreement, as already stated, is concerned with the way the balance, $178,442, was to be worked out. When Colwell secured this, his interest in the matter was to cease. This was to be the specific result, according to the second paragraph of the agreement, if Fulton at any time within the 10 years should pay him whatever of the $178,442 had not been taken care of; and it was also to follow, according to the eighth paragraph, whenever this sum was realized from any source. There was but one other way practically provided for bringing the agreement to an end. According to the ninth paragraph, if Fulton had to foreclose the mortgage, and bought in the premises, he might either execute a mortgage thereon to Colwell for the balance due, with interest, without personal liability, or he could end the matter by conveying the premises directly to him without more. It is, indeed, provided by paragraph 10 A that, in case of a default by Fulton for 30 days in any of his covenants, Colwell could foreclose the mortgage (which, according to another paragraph, was to be reassigned to him as collateral), or he might, at his option, after demand and notice to Fulton, dispose of it at public sale. Just what would be the effect if the latter course were pursued, is not clear. To a certain extent it would terminate the agreement, and perhaps may be recognized as another means for doing so. But this comprises all that there is, either directly or indirectly, for bringing the agreement to a close, and the means so provided necessarily preclude any others. But in the meantime, while the scheme was in process of being carried out, Colwell was not to be left without any return from the property which he had turned over to Fulton, and hence we have the provision with regard

to the payments on account of interest, which is the subject of this suit. By the very first of the numbered paragraphs of the agreement Colwell was to receive $500 monthly on the 3d day of each month as a payment on account of the interest accruing on the deferred $178,442. This undertaking by Fulton is absolute, and is not conditioned on the outcome of the transaction, or anything else. He was to pay it month by month until the agreement was brought to an end in some one of the ways which we have discussed. For a year and a half he recognized the obligation, making payments up to March 1, 1894; but he has done nothing since. At the time this suit was brought there were some ninety-odd of these installments due, and the plaintiff is clearly entitled to recover them in this action. There is no difficulty because it is brought during the currency of the agreement. It does not sound in damages for a breach, but is simply for the monthly sums of $500 which the defendant covenanted to pay; and it is well settled that, where installments of money are provided for, suit may be brought for them as they accrue. Bush v. Stowell, 71 Pa. 208, 10 Am. Rep. 694; Tucker v. Randall, 2 Mass. 283; Cooley v. Rose, 3 Mass. 221.

Let judgment be entered on the demurrer in favor of the plaintiff for the installments due on the agreement in suit at the time of the bringing of this action, with leave to defendant within 10 days, for cause shown, to apply to be allowed to answer over.