JOSEPH M. GOODWIN, EXECUTOR, ESTATE OF HARRY E. GUSTIN

*vs.*

CABOT AMUSEMENT COMPANY.

Cumberland.      Opinion March 15, 1930.

*Ellis L. Aldrich,* for plaintiff.
*Benjamin L. Berman,*
*David V. Berman,*
*Jacob H. Berman,*
*Edward J. Berman,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, JJ.

FARRINGTON, J.    The case comes up on report. The declaration is in covenant. The facts are as follows:

The defendant corporation was in control under lease of two theaters at Brunswick, Maine, known as the Pastime Theater and Cumberland Theater. On June 13, 1917, it entered into a written agreement under seal with one Andrew P. Bibber under the terms of which Bibber was to manage and operate the theaters for and during the remainder of the time mentioned in the respective leases, and for compensation he was to receive one-half the net profits, and was also to share one-half the net losses. The profit, or loss, was to be paid on the first day of each month.

On June 10, 1918, Bibber, having in the meantime managed the theaters as provided in the agreement, and having been paid according to the terms thereof, assigned, under seal, with the consent and approval of the defendant, his rights in the agreement to one Maxcy Hill, who in turn assigned, under seal, his rights in the agreement to Harry E. Gustin, the decedent, whose estate brings this action. The assignment to Gustin was also made with the consent and approval of the defendant. Gustin thereafter managed the two theaters in accordance with the provisions of the agreement of June 13, 1917, from June 2, 1919, until November 22, 1926, when he died. From June 2, 1919, to November 22, 1926, the defendant paid Gustin on or about the first of each month one-half of the net profits under the agreement of June 13, 1917.

Prior to his death, Gustin, on May 18, 1926, took in his own name a lease of the Pastime Theater heretofore mentioned, the lease giving consent that the lessee might assign or sublet to Cabot Amusement Company, or Maine and New Hampshire Theaters Company. Under its terms this lease, dated May 18, 1926, was for a term of ten years *from May* 1, 1927.

On June 9, 1926, what is styled an "Additional Agreement to the agreement of June 13, 1927 . . . " was entered into, under seal, between Gustin and the defendant, under the terms of which the agreement of June 13, 1917, was "confirmed in the terms thereof," subject to the following modifications or additions:

"The said Harry E. Gustin is to manage, for a period of ten years from May 1, 1927, the theatres mentioned in the said agree-

ment above referred to, or any other theater or theaters which the party of the first part, its successors or assigns, may build, lease or operate during said period, in Brunswick, upon the same terms and conditions, as to compensation and method of paying the same, and under the general direction of William P. Gray, representing the party of the first part, as set forth in the said agreement of June 13, 1917, herein mentioned.

"In the event that the party of the second part should die before the expiration of the period herein provided for, it is agreed by the parties hereto that the estate of the party of the second part shall receive from the party of the first part a sum equal to twenty-five per cent (25%) of the profits from said theaters for each month from the date of the death of the said party of the second part to the date of the expiration of the period covered by this agreement.

"If the party of the second part should, during the term of this agreement, become incapacitated, he shall receive the same payment as is provided for above in the event of his death.

"Any manager who may be employed by the party of the first part to take charge of the theaters herein mentioned, in the event of the death of the party of the second part or of his becoming incapacitated, shall not receive a salary in excess of Fifty Dollars ($50) per week without the consent of both of the parties hereto or their representatives."

On June 12, 1926, Gustin assigned, under seal, the lease of May 18, 1926, to Cabot Amusement Company.

Gustin died November 22, 1926, and his will was admitted to Probate on January 4, 1927, and letters testamentary were duly issued at the February Term of the Probate Court for Cumberland County to Joseph M. Goodwin, Executor named therein, and plaintiff in this case.

From December 1, 1926, to November 1, 1927, on or about the first of each month Goodwin, as executor of the estate of Harry E. Gustin, received twenty-five per cent of the monthly net profits of the two theaters.

Following November 1, 1927, payment was not made by the defendant to the Gustin estate of the twenty-five per cent of the net profits earned in the two theaters for November, 1927, December,

1927, January and February, 1928, and suit was brought by the executor, declaring in covenant, to recover the payments due for those months. By agreement of parties the hearing was before a single Justice without jury at the September 1928 Term of the Supreme Judicial Court in Androscoggin County. The only question raised was that of alleged over-payments sufficient to more than cover the sum claimed in the writ. The net profits for the four months sued for, November, December, January and February, were $7,436.17, of which one-quarter, or $1,859.04, was claimed to be due the estate. The sitting Justice in his finding said, "No evidence controverting any of these matters of fact was offered by the defendant who agreed that, for the purposes of this case only, the validity of the contracts set up by the plaintiff and their binding effect on defendant, might be assumed. In view of this stipulation and in the light of the evidence offered, I find the plaintiff is entitled to judgment for the amount claimed with interest from the date of his writ."

The judgment was paid to Goodwin as executor of the Gustin estate and was fully satisfied. This covered everything up to March 1, 1928.

Following March 1, 1928, the defendant although continuing to operate the theaters and although receiving profits and although sending to the Gustin estate monthly reports of the business and earnings of the two theaters from the date of Gustin's death to the time of the hearing on the first case in September, 1928, made no further payments of one-fourth of the net profits to the Gustin estate, on the first day of each month or at any other time, and by writ dated December 5, 1928, the present suit declaring in covenant was brought to recover payments claimed to be due from the defendant to the Gustin estate for the months of March, April, May, June, July, August, September, October and November, 1928. The writ was returnable in Cumberland County and by agreement the case comes up on report.

As a part of the stipulations it is agreed that the total net profits for the monthly periods covered by the writ were $12,864.96, one-quarter of which, $3,216.24, being the amount for which plaintiff is entitled to judgment, if recovery can be had under this action.

The defendant maintains, in effect, that the plaintiff can not recover for any breach (1) because the additional agreement between Gustin and the defendant was without sufficient legal consideration; (2) that if there were sufficient consideration at the time of the execution of the additional agreement, the defendant is relieved from liability because of a total failure of consideration; and (3) that the plaintiff, having brought an action prior to the present suit, and having recovered a judgment which has been fully satisfied, is now barred from further recovery because the matter is *res adjudicata.*

Taking in order the claims of the defendant, the Court is of the opinion as to (1) that the mutual obligations assumed by the parties at the time of the making of the additional agreement on June 9, 1926, which modified the agreement of June 13, 1917, constituted sufficient legal consideration. *Oscar Schlegel Mfg. Co.* v. *Peter Cooper's Glue Factory* (N. Y.), 132 N. E., 148. It must also be borne in mind that the agreement was under seal and therefore consideration is presumed. *Tucker* v. *Smith*, 4 Me., 419; *Neil* v. *Tenney*, 42 Me., 324; *Wing* v. *Chase*, 35 Me., 265; *Augusta Bank* v. *Hamblet*, 35 Me., p. 495; *Roth* v. *Adams*, 185 Mass., 341; *Fletcher* v. *Fletcher*, 191 Mass., 211; *Childs* v. *Barnum*, 11 Barb., 14; *Barrett* v. *Carden*, 65 Vt., 431.

In absence of any evidence or of any attempt to produce evidence to overcome this presumption, it seems unnecessary to give further consideration to this point. The fact that it was under seal leaves nothing further to be said.

Point (2) as claimed by defendant is that if there were sufficient consideration at the time of the execution of the additional agreement of June 9, 1926, the defendant is relieved of liability because of a total failure of consideration due to the death of Harry E. Gustin, which occurred before Gustin was to begin, on May 1, 1927, the time the new lease came into force, his duties under the additional agreement.

At this point again it must be remembered that the agreement was under seal. A claim of failure of consideration is no more potent than a claim of no consideration in removing the legal effect

of the presence of the seals on the agreement. We therefore find that the two agreements constituted one valid agreement.

No question is raised in this case, nor could there be, but that two parties can make a valid contract or agreement like the one before this court. The presence of the seal makes unnecessary any inquiry into what may have been the impelling reason or consideration which resulted in a contract providing for payments of money at stated intervals, to his estate, even after Gustin was dead.

There can be no question but that the parties to the agreement understood its meaning and significance, so plainly and clearly expressed as to make impossible misunderstanding of its purpose and intention, that, when and if death rendered Gustin's services no longer available, his estate should still receive the monthly payments as provided. Plaintiff's exhibit No. 9, a letter to Gustin from William P. Gray, President of the defendant Corporation and who directed its affairs until his death, in 1927, was offered under objection on the ground that it was immaterial and irrelevant and also on the ground that it was offered for the purpose of showing a consideration for what we have called the additional agreement in opposition to the rule that parol evidence can not be introduced to vary or enlarge the terms of a written contract. The presiding Justice admitted it "in so far as its contents may be regarded as admissible or material to any issue in the case." In view of the findings of this court that, the so-called new agreement being under seal, there is no occasion to go further into the question of consideration, as far as that aspect is concerned, no attention or weight need be given or is given to the letter on the ground of the second objection to its admission. This letter, plaintiff's Exhibit No. 9, does not in any way tend to vary, contradict, enlarge or qualify the terms of the sealed agreement, but it does show something of the situation, conditions and circumstances surrounding the parties, and for that purpose is admissible. *Wilbur* v. *Stoepel et al*, 46 N. W., 724 (Mich.) ; *Threlkeld* v. *Steward et al*, 103 Pac., 630 (Okl.) ; *Fire Insurance Ass'n, Ltd.* v. *Wickham*, 141 U. S., 564 ; *Sawyer* v. *Eaton*, 293 Fed., 898 ; 10 R. C. L., Sec. 235.

The original and additional agreements must be regarded as one. By its very terms, clearly expressed, the so-called new agreement,

provided for a future in which on account of sickness or death Gustin might not be able to render service. Instead of the fifty per cent of the net profits which would have come to Gustin, had he lived, twenty-five per cent was to go to his estate. As has been stated, the two agreements are to be considered as one. The original written contract under seal, clear in its terms, was modified and changed by the so-called additional agreement under seal, equally clear in its terms, but the result is one contract still clear as to its terms, and with purpose and intention also clear.

The letter of William P. Gray, to which reference has been made above, clearly discloses the fact that there had been discussion of possible arrangements for Gustin's future. Without giving the letter in full, we do quote, as bearing on the circumstances surrounding the parties and leading up to the making of the new agreement, the following:

"On the other hand if you prefer to have an agreement whereby in case anything happened to you, the money would be turned over to your heirs after we took out the salary for a Manager, it would be perfectly alright with me. Either of these two arrangements would be all right — it is just a question of which you would prefer. This takes care of you in most any way that you wish to be taken care of."

This letter was written on June 2, 1926. On June 9, 1926, there was executed the so-called additional agreement carrying out the idea suggested in the letter and showing beyond question or doubt that the provision for payments to the Gustin estate was embodied in the agreement as a result of due conference between parties. Gustin's possible fears as to what the future might hold for those who would be left behind in the event of his death may well have been dispelled by the additional agreement which manifestly did not depend upon the assumption or consideration that Gustin would continue to render services in connection with the lease of May 18, 1926, and which was to begin May 1, 1927. It would be interesting to know, but we can not and need not inquire, what was the compelling consideration which resulted in the unilateral agreement to make monthly payments to Gustin's estate. The presence of the seal takes care of the question raised as to want of or failure

of consideration and the Court, being of the opinion that the original agreement as changed and modified by the additional agreement constitutes one obligation, and that there was sufficient consideration and that there has been no failure of consideration, and so finding, comes to contention (3) of the defendant that the plaintiff is barred from recovery in this action by reason of the principle of *res adjudicata.*

The defendant takes the position that the agreement in the case under consideration is an entire and indivisible contract, and not severable, and susceptible of only one breach and that one recovery only can be had which must include all future damages. The assumption and claim is made, and the defendant's argument as to *res adjudicata* is based on that assumption and claim, that the first suit on which judgment was recovered, and satisfied, was a suit for breach of the entire contract. The declaration in the first suit shows, on the contrary, that it was a suit to recover the installments of net profits then due, on the basis of monthly payments, and the same is true as to the declaration in the present action.

We are unable to agree with the defendant that the additional agreement "expressly" omitted to set any date on which the profits were to be paid. That agreement expressly provides for payment of "a sum equal to twenty-five per cent (25%) of the profits from said theaters for *each month* . . . " and, taken in conjunction with the provisions as to time of payment contained in the original agreement, we find that it calls for payment of the percentage of profits at the same time, on the first of each month.

The defendant also contends that it was the intention of the parties that the undertaking was not to pay on the basis of a percentage of the profits on the first of each month, but was a promise to pay a sum equivalent to twenty-five per cent of the profits to be computed on the month's business during the ten-year period. With this contention we are also unable to agree. Taking into consideration all of the facts of the case, the new agreement together with the old agreement, always to be regarded as one, we find that it was the intention of parties that the payments should be made on the first of each month.

The cases relied on by the defendant are cases where the action was for a breach of the entire contract. The law appears to be well settled that a second action following a judgment on a prior action for a breach of the same entire contract is barred.

The cases also appear to hold generally that in an action for such breach recovery may be had for future as well as for present damages.

In the case of *Pierce* v. *Tennessee Coal, Iron and R. R. Co.*, 173 U. S., 1, involving monthly wages, under written contract, cited by the defendant, the objection was made that future damages could not be recovered but the case held to the contrary. Justice Gray, p. 16 says, "The defendant committed an absolute breach of the contract, at a time when the plaintiff was entitled to require performance. The plaintiff was not bound to wait to see, if the defendant would change its decision, and take him back into its service; or to resort to successive actions for damages from time to time; or to leave the whole of his damages to be recovered by his personal representative, but he had the right to elect to treat the contract as absolutely and finally broken by the defendant." The Court does not say that the plaintiff could not bring suit for installments as they became due. On the contrary, the inference is clear that successive actions for installments might have been maintained and that it was within the plaintiff's right to have chosen to proceed either on the basis of a total breach and in that action recover all damages, present and future, or to sue for the separate installments due at the time suit might be brought. The case holds that a plaintiff can make his election to sue for damages on the basis of a total breach of the contract and recover damages for that total breach, but it did not decide that the plaintiff is *obliged* to adopt that course. The same comment is true as to *Wakeman* v. *Wheeler*, 101 N. Y., 205; *Schell* v. *Plumb et al*, 55 N. Y., 592; *Ogden-Howard Co.* v. *Brand*, 108 Atl., 277. Other cases cited by the defendant, while concerned more with the question of whether future as well as present damages can be recovered, are all cases where suit is brought on the election to consider the breach as total.

In the case of *Pakas* v. *Hollingshead et al*, 184 N. Y., 211, 77

N. E., 40, cited by defendant, the Court said, "There can be no doubt that the contract is entire," and a breach of an entire contract was assumed. The case stands in the language of the court for this proposition that "there can be but one action for damages for a *total breach* of an entire contract to deliver goods, and the fact that they were to be delivered by installments from time to time does not change the general rule."

In this last case Cullen, C. J., in a well reasoned opinion, strongly dissented on the ground that a plaintiff should have the right to elect whether to treat the default as a complete breach and thus maintain his suit for all his damages or to treat the contract as in force and recover damages for each default as it occurred.

In the case of *Alie* v. *Nadeau*, 93 Me., 282, cited by the defendant, the right to sue for weekly wages as payment was successively breached, as long as the employment continued, was recognized but in that case the discharge from employment stopped the services and suit for wages as such was no longer possible and the action was necessarily brought on the breach of the contract. In the instant case the contract contemplated the death of Gustin and in the event of his decease specifically provided for a continuation of the monthly payments to his estate.

"If one contracts to do several things, at several times, an action of assumpsit will lie on each default; for although the agreement is entire, the performance is several and the contract divisible in its nature." *Knight* v. *New England Worsted Co.*, 2 Cushing, 271, cited with approval in *Denny* v. *Williams*, 5 Allen, 1; *Kreb Hop Co.* v. *Livesley et al* (Ore.), 114 Pac., 944; *Perry* v. *Harrington et al*, 2 Metcalf, 368, at p. 370; *Badger* v. *Titcomb*, 15 Pick., 409; to the same effect *Burnham* v. *Brown*, 23 Me., 400; *Secor* v. *Sturgis et als*, 16 N. Y., 548.

Where an agreement provides for the payment of installments of money, suit may be brought for successive installments, if they are not paid as they become due, during the continuance of the agreement, and a judgment recovered in the first suit is no bar to the second suit if the second suit covers only subsequent installments. *Lorillard* v. *Clyde*, 122 N. Y., 41, 25 N. E., 291; *Colwell* v. *Fulton*, 117 Fed., 931, and cases cited; *Deweese* v. *Smith et als*,

106 Fed., 438 (Circuit Ct.); *Peurrung* v. *Carter-Crume Co.* (Ohio), 110 Fed., 107; *Beach* v. *Crain,* 2 N. Y., 86, 49 Am. Dec., 369, and note; *Weiler et als* v. *Henarie* (Ore.), 13 Pac., 614; approved in *Racke* v. *Anheuser-Busch Brewing Co.* (Tex.), 42 S. W., 774; *Whitaker* v. *Hawley* (Kan.), 1 Pac., 508; *Fay* v. *Guynon,* 131 Mass., 31; *Cross* v. *United States,* 14 Wallace, 479; *Marshall* v. *John Grosse Clothing Co.* (Ill.), 56 N. E., 807; *Ahl* v. *Ahl,* 60 Md., 207; Williston on Contracts, Vol. III, p. 2337, Sec. 1292.

In view of the evident intent of the parties to the two agreements, which we have designated as the one agreement, a clear intent to give to the Gustin estate the benefit of definite and regular payments of money at agreed periods, we find that the agreement is divisible in its terms, susceptible of successive breaches on failure to pay installments when due, and that each successive failure to pay under the agreement constitutes a fresh cause of action of which the plaintiff can avail himself if he chooses.

Having already expressed our finding that the former suit was brought, not on a breach of the entire contract, but on the election to collect installments due under it, we further hold that the former judgment, not having been recovered on a suit for an entire breach, and not having been recovered on the same cause of action as in the present case, is not a bar to the present suit. It is true that the cause of action in the first suit and the cause of action in the present suit arose out of the same single agreement, but they are different and separate causes of action under it.

Recognizing as generally accepted law that all installments due at the time suit is brought should be included in that suit, we have but to say that all such installments were so included in this case.

The fact that the cause of action in the former case and that in the present case are not the same is fatal to the claim of defendant, who relies upon the doctrine of *res adjudicata,* and judgment must be awarded to the plaintiff.

In accordance with the agreement of the parties contained in the stipulations in the case, the entry will be,

> *Judgment for the plaintiff for $3,216.24, with interest from the date of the writ.*