L.P. BENTLEY and Clarice E. Bentley,
Plaintiffs and Respondents,

v.

Lowell E. POTTER, Defendant
and Appellant.

No. 18241.

Supreme Court of Utah.

Dec. 27, 1984.

Gerald M. Conder, Conder & Nielson, Salt Lake City, for defendant and appellant.

Steven F. Alder, Salt Lake City, for plaintiffs and respondents.

STEWART, Justice.

The defendant appeals from a judgment against him in the amount of $19,375.46 for breach of a mining lease. The appeal raises various issues of contract law.

In May 1978, the plaintiffs L.P. and Clarice Bentley ("the lessors") leased fourteen unpatented placer mining claims on federal land in Juab and Tooele Counties to the defendant Lowell Potter ("the lessee"). By the terms of the lease, the lessors agreed to register the mining claims with the Bureau of Land Management (BLM). The lessee agreed to do the annual assessment work on the fourteen claims. Federal law requires the assessment work to be completed by September 1 of each year. 30 U.S.C. § 28 (1976); 43 C.F.R. § 3851.1 (1983). The lessee also agreed to pay the lessors a minimum annual royalty, the payment year running from December 1 to November 30; to operate the leased premises in a workmanlike manner in accordance with recognized mining practices; and at the expiration or termination of the lease, to leave the leased premises "in a clean and orderly manner and as close to its former natural state as reasonably possible." At approximately the same time that the parties executed the lease, the lessee's solely owned corporation, Mining and Energy Leasing Corp., agreed to purchase a truck from the lessors for $5,000.

The lessors allege in this suit that the lessee did not do all the required assessment work; that he did not pay the minimum annual royalty; and that in working one of the claims, he deposited overburden in a manner which blocked an access road and covered a known deposit of aragonite, a mineral valuable in building construction. The lessors also allege that the lessee's corporation failed to make the final $1,000 payment on the truck it purchased and that the lessee was personally liable for that amount under the terms of a guarantee agreement.

By letter dated August 10, 1979, the lessors' attorney requested the lessee to begin the assessment work for that year and to move the overburden to a more suitable location. The lessee did not respond. To preserve their interest in the mining claims, the lessors paid to have the assessment work done within a few months of the August 10th letter. At a later date, they also paid to remove the overburden blocking the access road.

The lessors filed the instant suit against the lessee December 4, 1979. The complaint sought damages under the lease for (1) the lessee's failure to do the required annual assessment work; (2) the misplacement of the overburden, in violation of the covenants in sections four and eight of the lease; and (3) the failure of the lessee to pay the final $1,000 due on the purchase of the truck by the lessee's corporation. The lessors also sought damages for the minimum annual royalty payments for 1979 and 1980.

The trial court found that the plaintiffs terminated the lease December 4, 1979, when the instant lawsuit was filed. The court ruled in favor of the plaintiffs on all issues except the minimum annual royalty payments in 1980. On appeal, the lessee raises numerous points.

## I.

■ The lessee asserts failure of consideration for the lease, and in support makes

four arguments.[1] Failure of consideration exists "wherever one who has either given or promised to give some performance fails without his fault to receive in some material respect the agreed exchange for that performance." 6 S. Williston, *The Law of Contracts* § 814 at 17–78 (3d ed. 1962). *See Petersen v. Intermountain Capital Corp.*, 29 Utah 2d 271, 273, 508 P.2d 536, 538 (1973); *Assets Realization Co. v. Cardon*, 72 Utah 597, 604, 272 P. 204, 206 (1928).

■ First, the lessee argues that the lease "granted lodes and veins" in the leased property, but that the lessors "never had title to the lodes or veins in question but merely filed on the placer claims." The lease provides in relevant part:

> The lessors hereby grant, lease and let exclusively unto the lessee, all of their right in and to those certain unpatented placer mining claims ... described in Exhibit "A" attached hereto.... The rights hereby granted include the lodes, veins, beds, dumps and other occurrences of the leased minerals within the boundaries of the leased premises. The rights granted by the lessors to the lessee are limited to such rights as may be owned by the lessors in the leased premises.

On its face, the lease does not purport to grant rights in lode claims; the lease clearly grants rights only in unpatented placer claims. The lessee's argument that the lease represents the lessors as having "title" to the lodes is incorrect.

The lease does, however, grant the lessee such rights to lodes and veins "as may be owned by the lessors in the leased premises" pursuant to their placer claims. The lessee does not contend, however, that any lodes and veins were known to exist at the time he signed the lease or at any time thereafter. Under these circumstances, the lessee has no valid complaint.

■ Second, the lessee argues that the lessors failed to comply with 43 C.F.R. § 3833.2–1 in failing to make the necessary filings with the BLM with respect to the claims. However, the lessee did not prove failure to comply with that section.[2] The burden is on the lessee to show failure of consideration, *General Insurance Co. v. Carnicero Dynasty Corp.*, Utah, 545 P.2d 502, 505 (1976), and the lessee did not carry his burden of proof.

Third, the lessee argues failure of consideration based on the lessors' failure to register with the BLM a transfer of interest of six of the mining claims by a Mr. Fisher to the lessors. Bentley testified that Fisher had been listed as a co-owner on six of the mining claims before they were amended, and that Fisher had traded his interest in the claims to Bentley. The documents filed with the BLM and adduced at trial contain no document transfering Fisher's interest. Nevertheless, the amended notices of location filed with the BLM show the Bentleys to be the sole owners of the six claims. Whatever the situation between the Bentleys and Fisher, the lessee was not in any way impeded from exploiting the claims which were the subject matter of the lease.

Finally, the lessee asserts a failure of consideration because Mrs. Bentley, a named lessor, should have been, but was not, shown on the BLM documents as a co-owner of the claims. As to the six claims located by amended notice, the argument is untrue. In any event, Mr. Bentley was the record owner of the claims, and for all that appears the defendant received everything he had bargained for. Mrs.

---

1. In his brief, the lessee uses the words "lack of consideration." However, in substance the lessee actually argues failure of consideration.

There is a distinction between lack of consideration and failure of consideration. Where consideration is lacking, there can be no contract. Where consideration fails, there was a contract when the agreement was made, but because of some supervening cause, the promised performance fails.

*General Insurance Co. v. Carnicero Dynasty Corp.*, Utah, 545 P.2d 502, 504 (1976).

2. The record shows that as to ten of the mining claims, all located in Juab County, the lessors timely filed notices of annual assessment work. Nothing appears in the record as to the other four claims, which are located in Tooele County.

Bentley's signature on the lease did not affect the lessee's rights and no contention to the contrary is made.

## II.

The lessee also contends that the lessors' notice of default did not comply with the 60-day notice provision in the lease, and therefore the trial court erred in ruling that the lease was terminated by the lessors. Under the lease, giving notice of default was a condition precedent to the lease being terminated.[3] By letter dated August 10, 1979, the lessors informed the lessee that he was in default of the covenants to perform the assessment work and remove the overburden. The letter demanded performance, but did not state that a failure to perform would result in termination of the lease. Rather, the letter stated that "[t]his letter is not intended as termination of the lease but as notice that you may be liable thereunder."

 We note at the outset that the necessity and sufficiency of a notice of an intent to forfeit a mining lease is generally governed by the rules which apply in case of ordinary leases. *May v. Shields*, Wyo., 393 P.2d 319 (1964); 58 C.J.S. *Mines and Minerals* § 173(b) (1948). *Cf. Hartman v. Potter*, Utah, 596 P.2d 653, 656 (1979). When a lease provides that if a party to the lease is in default then the other party may terminate the lease after giving notice of the default, the notice must plainly indicate the nature of the default or breach and give reasonable notice that failure to cure the default within the time allowed may lead to termination. In *Moore v. Richfield Oil Corp.*, 233 Or. 39, 44–45, 377 P.2d 32, 35 (1962), in which a lease contained a termination provision similar to this case, the Court stated:

A notice of default must convey the message that the notifier is initiating the steps necessary to finally assert his legal rights and that if the default is not cured he may take final action as provided in the contract. . . . The notice to the lessee must give him warning that the lessor will assert his right of termination if the lessee does not cure the default within the [grace period].

*Accord Hocker v. Heins*, N.Y.Sup.Ct., 231 N.Y.S.2d 481 (1962); *Turner v. Yow*, Tenn. App., 657 S.W.2d 94 (1983); *Wendlandt v. Sommers Drug Stores Co.*, Tex.Civ.App., 551 S.W.2d 488 (1977); 51C C.J.S. *Landlord & Tenant* § 114(3) (1968). *See also* cases cited at Annot., 31 A.L.R.2d 321, § 18 (1953).

The lessors' letter of August 10 did not plainly indicate that the lease might be terminated for nonperformance, nor had the lessee defaulted at that time on the obligation to perform assessment work. Clearly the lessors' letter was not sufficient to trigger the lessors' right to terminate. Alternatively, the lessors also claim that they terminated the lease in March, 1980, by a letter stating that the lease was terminated. But that letter failed to refer to any breach by the lessee or to give the required time to cure. Nevertheless, by the time of trial in October, 1981, both parties had treated the lease as terminated by mutual abandonment.

 The lease was not, therefore, terminated on December 4, 1979. Nevertheless, the lessors had the right to sue at that time for the lessee's breach of the covenant to perform the annual assessment work and for the payment of the minimum royalties. When a contract provides for the payment of money in installments, or requires the rendition at separate times of performances other than the payment of money, an action is maintainable when the duty of immediate performance of any of

---

**3.** The lease provided:

If, at any time, the Lessee shall be in default in the performance of any of the terms and conditions of this Lease on the part of the Lessee to be performed, provided such default is not the result of any of the "force majeure" causes set forth in Section XIII hereinbelow or which are beyond the control of the Lessee,

and if such default continues for a period of sixty (60) days after written notice of such default has been given by the Lessors to the Lessee, then, and in such event, this Lease shall be terminable. Such termination shall be effective as of the date of the Lessors' written notice to the Lessee terminating the same.

these accrues and a breach is committed. *Goodwin v. Cabot Amusement Co.,* 129 Me. 36, 149 A. 574 (1930); 4 *Corbin on Contracts* §§ 948, 949 (1951); 11 S. Williston, *The Law of Contracts* §§ 1290, 1292, 1294 (3d ed. 1968). *See Whitley Construction Co. v. Whitley,* 134 Ga.App. 245, 213 S.E.2d 909 (1975); *Haviland & Co. v. Sphinx Import Co.,* 55 Misc.2d 448, 285 N.Y.S.2d 414 (1967); *Stowell v. R.L.K. and Co.,* 66 Or.App. 567, 675 P.2d 1074, 1077 (1984). *Cf. Corbett v. Derman Shoe Co.,* 338 Mass. 405, 155 N.E.2d 423 (1959); *Kaiser v. Northwest Shopping Center,* Tex. Civ.App., 587 S.W.2d 454, 457 (1979) (action on continuing obligation). Accordingly, the lessors were entitled to sue for the lessee's failure to do the annual assessment work and to pay minimum royalties since both had been breached.

The lease was not formally terminated in either December, 1979 or March, 1980. However, since both the lessors and the lessee treated the lease as terminated by the time this suit came to trial, the lessors were entitled to recover for the lessee's breach of the redelivery covenant requiring the defendant to leave the leased premises "in a clean and orderly state and as close to its former natural state as reasonably possible."

### III.

The lessee also contends that the trial court erred in holding him liable for $1,000 owed by his corporation to the lessor for the purchase of the truck. The statute of frauds requires a promise to answer for the debt of another to be in writing. U.C.A., 1953, § 25–5–4(2). Since this promise was not in writing, the lessee asserts the claim is barred.

■ The statute of frauds is a defense that can be waived by a failure to plead it as an affirmative defense, *Phillips v. JCM Development Corp.,* Utah, 666 P.2d 876, 884 (1983); *W.W. & W.B. Gardner, Inc. v. Pappas,* 24 Utah 2d 264, 470 P.2d 252 (1970), admitting its existence in the pleadings, *Abba v. Smyth,* 21 Utah 109, 59 P. 756 (1899); *Lauer v. Richmond Co-Opera-*

*tive Mercantile Institution,* 8 Utah 305, 31 P. 397 (1892); or admitting at trial the existence and all essential terms of the contract, *Baldwin v. Vantage Corp.,* Utah, 676 P.2d 413, 417 (1984); *In re Roth's Estate,* 2 Utah 2d 40, 45, 269 P.2d 278, 281 (1954); *Adams-Riker, Inc. v. Nightingale,* 119 R.I. 862, 383 A.2d 1042 (1978); 2 *Corbin on Contracts* § 498 (1950 & Supp.1984). *Cf. Lish v. Compton,* Utah, 547 P.2d 223 (1976) (applying U.C.C. § 201(3)(b)). Since a purpose of the statute of frauds is to prevent fraud and perjury on the part of one claiming that another had guaranteed a debt, the one opposing the claim cannot complain if he admits the existence of the guarantee. *Dehahn v. Innes,* Me., 356 A.2d 711, 717–18 (1976). *Accord Wolf v. Crosby,* Del.Ch., 377 A.2d 22, 25–27 (1977); *Trossbach v. Trossbach,* 185 Md. 47, 42 A.2d 905, 907–08 (1945). "It cannot give a court any great satisfaction to permit a defendant to escape from performing a contract he admits he has made." 2 *Corbin on Contracts* § 320 at 153 (1950).

■ The lessee admitted at trial that when he signed the bill of sale on behalf of his corporation he intended and understood himself to be a guarantor of the debt. Therefore, the statute of frauds is no defense to the lessors' claim.

### IV.

Finally, the lessee argues two additional points, neither of which has merit. He argues that because the lessors had knowledge of the placement of the overburden when it was deposited and made no attempt at that time to have it removed, they should be estopped from asserting damages for removal of the overburden. However, objection was made to the placement of the overburden, and the lessee gave an assurance that it would be moved. In addition, the lessee argues that the damages awarded the plaintiffs for removal of the overburden were excessive. We think the award was adequately supported by the evidence.

## V.

The lessors argue that since the lease did not terminate in December, 1979, their damages for failure to pay the minimum royalty should include the period up to March, 1980, the date they claim that termination occurred. The lessors did not file a cross-appeal and may not now raise that issue. *Cerritos Trucking Co. v. Utah Venture No. 1*, Utah, 645 P.2d 608, 613 (1982); *Terry v. Zions Cooperative Mercantile Institution*, Utah, 617 P.2d 700 (1980); *Eliason v. Watts*, Utah, 615 P.2d 427 (1980).

Affirmed. Costs to respondents.

HALL, C.J., and DURHAM, J., concur.

HOWE, J., concurs in the result.

ZIMMERMAN, J., does not participate herein.