## HARGREAVES v. BURTON.

No. 3717.   Decided April 3, 1922.   (206 Pac. 262.)

1. APPEAL AND ERROR—QUESTIONS OF FACT DETERMINED ON APPEAL IN EQUITY PROCEEDINGS. In an action in equity, the Supreme Court must determine questions of fact as well as questions of law, and is not bound by the findings of the trial court if they are clearly against the weight of the evidence.

2. EQUITY—DEFENDANT ADMITTING PLAINTIFF OWNED LEGAL TITLE HAS BURDEN OF PROVING EQUITY BY PREPONDERANCE OF THE EVI-

DENCE. Where defendant in equity admitted that the legal title to the property in controversy was in plaintiff, the burden is on him to establish an equitable right to the property by a preponderance of the evidence within the recognized principles of equity jurisprudence.

3. FRAUDS, STATUTE OF—DEFENDANT RELYING ON ORAL CONTRACT TO PURCHASE MUST PROVE CERTAIN, DEFINITE, AND UNAMBIGUOUS CONTRACT AND PART PERFORMANCE. Where defendant in an action to quiet title relied on an oral contract for the purchase of the property, he must prove a certain, definite, and unambiguous contract, and also such acts in part performance thereof as in equity are considered sufficient to take the case out of the statute.

4. VENDOR AND PURCHASER—EVIDENCE HELD NOT TO SUSTAIN FINDING OF ORAL CONTRACT FOR SALE, BUT ONLY TO SHOW AGREEMENT TO ENTER INTO WRITTEN CONTRACT. In an action to quiet title, evidence *held* not to sustain the trial court's finding that defendant had an oral contract for the purchase of the property, but only to show that he went into possession with the understanding he would enter into a written contract for purchase, and after his failure to do so remained in possession as a tenant paying rent.

5. SPECIFIC PERFORMANCE—ORAL CONTRACT FOR PURCHASE OF LAND MUST BE COMPLETE AND CERTAIN. An oral contract for the purchase of land to be enforceable in equity because of part performance must be complete and certain in its terms.[1]

6. FRAUDS, STATUTE OF—IMPROVEMENTS BY PURCHASER IN POSSESSION COSTING LESS THAN VALUE OF POSSESSION NOT SUFFICIENT PART PERFORMANCE. Where a purchaser of property went into possession under an oral contract for purchase, and made certain small improvements on the premises, the making of such improvements was not sufficient part performance to take the case out of the statute of frauds (Comp. Laws 1917, § 4874) where they added no substantial value to the property and cost less than the reasonable value of the possession of the property.[2]

Appeal from District Court, Third District, Salt Lake County; *Ephraim Hanson*, Judge.

[1] *Price* v. *Lloyd*, 31 Utah, 86, 86 Pac. 767, 8 L. R. A. (N. S.) 870.
[2] *Price* v. *Lloyd*, 31 Utah, 99, 86 Pac. 771, 8 L. R. A. (N. S.) 870; *Karren* v. *Rainey*, 30 Utah, 7, 83 Pac. 333.

Action to quiet title and rceover possession of premises by Thomas Hargreaves against E. Burton.   Judgment for defendant, and plaintiff appeals.

REVERSED AND REMANDED, with directions to enter a decree for plaintiff.

*W. E. Rydalch,* and *Rawlings & Wallace,* all of Salt Lake City, for appellant.

*L. E. Cluff,* and *J. C. Wood,* both of Salt Lake City, for respondent.

THURMAN, J.

As a first cause of action plaintiff alleges that for more than four years next preceding the commencement of the action he was, and still is, the owner in fee of all of lot 5, and the west half of lot 6, block 2, Somerville addition, Salt Lake City, Utah, and all buildings situated thereon; that defendant claims some interest in the premises, but that said claim is invalid and without right.

As a second cause of action plaintiff alleges that he is the owner of the property, and entitled to its immediate possession; that defendant entered into possession thereof on or about the 22d day of September, 1916, under a parol agreement that he would enter into a written contract with plaintiff for the purchase of said property, but that, although plaintiff has on several occasions requested defendant to enter into said contract, defendant has refused to do so, and still refuses; that no contract has ever been entered into by defendant for the purchase of said property, and that ever since the 22d day of September, 1916, defendant has been permitted to remain in possession of said property as a monthly tenant paying plaintiff for the use and occupation thereof the sum of $20 per month as a monthly rental therefor; that the term for which said premises were demised has terminated, and that defendant holds over and continues in

possession of said premises without permission; that on June 1, 1920, plaintiff served notice in writing on defendant to quit said premises and surrender possession thereof to plaintiff on or before the 23d day of said last-named month, but that defendant refused and neglected to surrender the premises, and continues to occupy the same; that defendant claims an interest therein adverse to plaintiff; that the monthly value of the rents and profits of said premises is the sum of $25; that by reason of defendant's wrongfully withholding possession thereof from plaintiff plaintiff has been damaged in the sum of $250. Plaintiff prays for both legal and equitable relief.

Defendant by his answer in substance admits that plaintiff is the owner of the legal title to the premises in controversy, and that plaintiff served him with written notice to quit and surrender possession thereof, but defendant affirmatively alleges that in March, 1916, plaintiff and his wife, Susanna Hargreaves, mother of defendant by a former marriage, entered into an oral agreement with the defendant. whereby plaintiff and his said wife agreed to purchase a lot and construct a house thereon for the use, benefit, and ownership of defendant; that defendant was to select such lot as he desired and decide upon plans for the house; that defendant selected the lot described in plaintiff's complaint and presented plans for said house to plaintiff and his wife; that thereafter plaintiff, with the aid of defendant, constructed a house on said lot, and the defendant with his family moved therein on the 22d day of September, 1916, in pursuance of said oral agreement. It is then alleged in the answer that the oral agreement between plaintiff and defendant was in substance and effect that defendant was to pay to Susanna Hargreaves the sum of $2,300 and 8 per cent. interest, at the rate of $20 per month, and a greater sum when the defendant's financial condition permitted it. Defendant further alleges that, because of the relationship existing, and the representations made by plaintiff and his wife as to their interest in defendant's welfare, defendant relied on their assurances and entered into said contract and made improvements on the

premises. (Reference to said improvements will be made later on.) Finally defendant alleges that he has complied with the terms of said contract and is ready and willing to continue under the provisions thereof; that said agreement so made in March, 1916, was and is just and equitable as between Susanna Hargreaves and said defendant, and the price agreed upon was and is the reasonable value of said property. Defendant prays that plaintiff's action be dismissed, and that defendant be allowed his costs. Plaintiff, replying to defendant's answer, generally and specifically denied the affirmative matter therein alleged.

The trial court found in favor of defendant, and from the judgment entered plaintiff appeals. Numerous errors are assigned relating to the admission and rejection of evidence, but it is not necessary that the alleged errors be considered in detail.

The controlling question is, Does the evidence disclosed by the record sustain the findings of the trial court?

This is an action in equity in which it becomes our duty to determine questions of fact as well as questions of law.

The legal title to the property in question being admittedly in the plaintiff, the burden was upon the defendant to establish his equitable right, if any he had, by a preponderance of the evidence. While he was not in position in the instant case to demand affirmative relief, nevertheless, from the nature of his defense, in order to defeat plaintiff's action it was incumbent upon defendant to establish his defense by a preponderance of the evidence within the recognized principles of equity jurisprudence relating to specific performance of contracts for the sale of real property.

It is admitted that the alleged contract relied on by defendant was not in writing. Plaintiff denied the contract as alleged, and thereby invoked the statute of frauds. It was therefore not only incumbent upon the defendant to prove a certain, definite, and unambiguous contract for the purchase of the property, but also such acts in part performance thereof as in equity are considered suffi-

cient to take the case out of the statute of frauds.

These are the questions to be determined and to these our attention must be directed in order to reach a correct conclusion.

The testimony of plaintiff and his wife, Susanna Hargreaves, was, generally, to the effect that there was no contract with defendant for the sale of the property to him, but that it was understood that a contract would be made; that they frequently urged defendant to enter into a definite contract and make a payment thereon, but he put them off by saying he would "when he got on his feet." The testimony of these witnesses tends to show that the first two or three months of failure on the part of defendant to enter into a contract and make a payment on the purchase price made it evident he was not going to make an effort to pay. They then commenced to treat him as a tenant, and payments made thereafter were made as monthly rental. The defendant paid $20 per month, and receipts were given to and accepted by him purporting to be for rent. These witnesses also testified that on several occasions when defendant made the monthly payment of $20 he would say, "Here is your rent." On one occasion, when Susanna Hargreaves spoke to him about making a payment on the place, he said, "What's the matter with you; I am paying the rent, ain't I?" On another occasion, when he had sold his team for $300, his mother suggested to him to make a payment on the place. She testified: "He flew at me and said he needed clothes and his wife needed clothes." She further testified that she told him he was only paying rent, and would never come to any agreement about the place, and that she got the same answer —he never had any money to pay down. She further testified:

"I only asked him $200. I says, 'To make it easy you could pay $50 at a time to fasten the deal,' but he never would."

The evidence is indisputable that plaintiff paid the taxes and assessments on the property, and also the insurance.

The evidence of defendant tended to show that he had an agreement with plaintiff and his wife that plaintiff would

purchase a lot and construct a house upon it and sell to the defendant; that it would cost about $2,000, and that defendant could pay $20 per month, at 8 per cent. interest, and make a payment down when he was financially able; that plaintiff said if defendant would dig the cellar and haul the gravel plaintiff would credit it on the purchase price. After the house was finished plaintiff said he could not sell it for less than $2,300. Defendant was to pay whatever it cost. Defendant went with plaintiff to select the lot in March, 1916. It was then they had the conversation as to the cost of the place and terms of payment. It was understood there was to be a payment down on the place and papers drawn up. Defendant was asked about that several times. Defendant planted four rose bushes and two sycamore trees, at $1 each, one of which has since died, the one living being about one and a half inches in diameter. He also planted one small cherry tree, which cost him nothing. He prepared the soil for planting the lawn, purchased the seed therefor, which cost $2.50 or $3, hauled several loads of gravel, and spent two or three hours with a team excavating a cellar. He laid a cement walk from the house to the barn after he was served with notice to quit and surrender the premises. He also painted the front and back porches. He was told he was dealing with the plaintiff the same as if he was a stranger. Other witnesses testified concerning the improvements made by defendant and to hearing plaintiff say he was constructing the house for defendant and his wife. A Mrs. Holt testified to hearing plaintiff say the house was to cost $2,000, and defendant was to pay $20 per month, and that $250 was also mentioned.

Plaintiff in rebuttal testified that defendant hauled ten loads of gravel and worked with his team about three hours excavating a cellar. It was understood that there was to be a down payment and a written agreement for $2,500 and 7 per cent. interest. Defendant never paid anything except the monthly payment of $20, which was accepted as rent. After defendant took possession plaintiff calcimined the house

and put a new lock on the back door. Defendant told plaintiff it was up to plaintiff to fix the lock.

Such are the main features of the evidence as disclosed by the record. It is manifest from the testimony of the defendant himself that there was no agreement on the part of the plaintiff to sell, or on the part of the defendant to buy, but simply an understanding or oral agreement that a written agreement would be entered into later on.

The defendant was compelled to move from the place where he was living, and needed a home. Plaintiff was in the business of building houses for sale or rent, and on the suggestion of his wife the mother of defendant was willing to build a house for defendant and contract with him the same as with a stranger. Such was the understanding between the parties. $20 per month, a payment down as soon as defendant was financially able, and a written agreement specifying the terms of the sale were necessary to complete the contract. Defendant paid the $20 per month, which was less than the rental value. He failed to make the down payment required, and also failed and neglected to enter into a contract, although often requested so to do. This condition existed for three or four months, and, when it became apparent that defendant was making no effort to make a payment or enter into a written agreement, plaintiff commenced to deal with him as a tenant, accepted the monthly payments as rent, and gave defendant rental receipts therefor. Defendant understood he was paying rent only, and so stated on numerous occasions when he came to make monthly payments. Such was the condition of affairs for a period of nearly four years. Finally plaintiff served him with notice to quit and surrender the premises. He refused the demand, and set up a claim adverse to plaintiff based upon the alleged oral agreement.

We are of opinion that the evidence in the case clearly preponderates against defendant's contention that there was such an agreement on the part of plaintiff to sell to defendant the premises in question as will meet the demands of equity in cases of this kind: (1) There

was to be an agreement in writing; (2) there was to be a payment on the purchase price which was never made; (3) the amount of such payment had never been agreed upon, and hence the contract was incomplete; (4) defendant made the monthly payments as rent and accepted rental receipts therefor, which was inconsistent with a contract to purchase; (5) the alleged agreement was to pay $20 per month and 8 per cent. interest, but whether the $20 per month included the interest or the interest was to be paid in addition thereto is not stated; in this respect the alleged agreement was indefinite; (6) the plaintiff paid all the taxes, assessments, and insurance, and when a slight repair was to be made on the house defendant informed plaintiff it was up to him to make it, all of which was consistent with the relationship of landlord and tenant, and hardly explicable on any other theory.

The foregoing infirmities and inconsistencies pertaining to the alleged contract between plaintiff and defendant are conclusively established by the evidence. ᐧ

In *Price* v. *Lloyd*, 31 Utah, 86, 86 Pac. 767, 8 L. R. A. (N. S.) 870, which was an action for the specific performance of a parol agreement or gift of land, the court held that the contract must be complete and certain in its terms. In support of this proposition the court, at page 97 of 31 Utah, at page 770 of 86 Pac., quotes with approval the following excerpt from Pomeroy on Specific Performance of Contracts (2d Ed.) § 145:

"This element of completeness must exist in every contract which can be specifically enforced, whatever be its external form, whether written or verbal, whether embodied in the memorandum required by the statute of frauds, or rendered obligatory by part performance, or by any other act which may obviate the prohibition of that statute."

In the beginning of the section referred to the same author says:

"It is an elementary doctrine of the courts of equity that they will not specifically enforce any contract unless it is complete and certain."

The following authorities cited by appellant are to the same effect: *Beall et al.* v. *Clark,* 71 Ga. 818; *Allen* v. *Webb,*

64 Ill. 342; *Rogers Locomotive & Mach. Works* v. *Helm*, 154 U. S. 610, 14 Sup. Ct. 1177, 22 L. Ed. 562; *Pike* v. *Pettus*, 71 Ala. 98; *Langston* v. *Bates*, 84 Ill. 524, 25 Am. Rep. 466; 13 C. J. 263. See, also, *Quinn* v. *Daly*, 300 Ill. 273, 133 N. E. 290, in which it is said:

"A contract will not be enforced unless the terms are clear, certain and unambiguous."

—and *Marti* v. *Ludeking* (Iowa) 185 N. W. 476, wherein the court says:

"Contracts to be specifically enforced must be so certain and definite in their terms as to leave nothing to conjecture or to be supplied by the court, and they must be mutual."

See, also, *Albia Light & Railway Co.* v. *Gold Goose Coal & Mining Co.* (Iowa) 185 N. W. 571.

In C. J., supra, it is said:

"In order that there may be an agreement, the parties must have a distinct intention common to both and without doubt or difference. Until all understand alike, there can be no assent, and therefore no contract. Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms."

The doctrine announced by Corpus Juris is especially significant in the instant case.

The defendant contends that the terms of the oral contract were in part as follows: Purchase price of the property, $2,300, with monthly payments of $20 per month at 8 per cent. interest. The plaintiff contends that, if an agreement was finally executed between the parties, the purchase price was to be $2,500, $20 per month, at 7 per cent. interest. The court found the purchase price to be $2,350, at 8 per cent. interest. Thus we see the alleged agreement was so indefinite and uncertain that not only plaintiff and defendant disagreed between themselves as to its terms, but that the trial court disagreed with both.

The authorities heretofore cited holding that the contract must be certain, definite, and unambiguous are not challenged. Further discussion is unnecessary as to that feature of the case.

Even if this were an action at law substantial evidence could not be found in the record to sustain defendant's con-

tention.   His admission that the contract was to be in writing and that no payments were made on the purchase price, together with the fact that he knew and understood that the monthly payments were made as payments for rent, would so qualify and limit any other evidence relied on by defendant as to leave his claim entirely unsupported by substantial evidence.   But, as stated in the beginning, this is a case in equity in which we are  required to determine the facts as well as the law, and in which we are not bound by the findings of the trial court, if, in our opinion, they are clearly against the weight of the evidence.

Even if we were convinced that a contract had been entered into sufficiently definite and certain as to justify the findings of the trial court, there would still remain the question as to whether or not there had been a sufficient part performance of the contract to take the case out of the statute of frauds.

Defendant relies on the following acts as part performance of the contract:   Preparing soil for planting a lawn and purchasing seed therefor, planting two small shade trees, one cherry tree, and four rose bushes, digging a cellar, hauling gravel, and painting certain parts of the house, the cost of all of which could not possibly exceed the sum of $75.   The cost is estimated by the plaintiff at less than $50, but a fair estimate should be allowed.   As against this allowance for the cost of improvements defendant has had the use of the premises in question for a period of nearly four years prior to the commencement of the action at a monthly rental of $20 per month, while the evidence is undisputed that the rental value was $25 per month.   In view of this feature of the case, it cannot be successfully contended that plaintiff's reliance on the statute of frauds as a bar in the instant case operates as a fraud against the defendant.   He has to all appearances been the gainer in the transaction instead of a loser, even if a decree had been entered in favor of the plaintiff.

In *Price* v. *Lloyd,* 31 Utah, at page 99, 86 Pac. 771, 8 L.

R. A. (N. S.) 870, the court in discussing this principle says:

"For, as the authorities say, it must appear that the improvements, relied upon as part performance are of a character permanently beneficial to the land and involving a sacrifice to him who made them because and in reliance of the gift. If he had gained more by the possession and use of the land than he has lost by his improvements, or if he has been in fact fully compensated for the improvements, they will not be available to him as a ground for specific performance"—citing cases.

In the same case, at page 96 of 31 Utah, at page 770 of 86 Pac., the court states the principle upon which part performance of a verbal contract will justify its enforcement in a court of equity. As illustrating its views, the court quotes from Pomeroy, supra, p. 144, as follows:

"When a verbal contract has been made, and one party has knowingly aided or permitted the other to go on and do acts in part performance of the agreement, acts done in full reliance upon such agreement as a valid and binding contract, and which would not have been done without the agreement, and which are of such a nature as to change the relation of the parties, and to prevent a restoration to their former condition and an adequate compensation for the loss by a legal judgment for damages, then it would be a virtual fraud in the first party to interpose the statute of frauds as a bar to the completion of the contract, and thus to secure for himself all the benefit of the acts already done in part performance, while the other party would not only lose all advantage from the bargain, but would be left without adequate remedy for his failure or compensation for what he had done in pursuance of it. To prevent the success of such a palpable fraud, equity interposes under these circumstances, and compels an entire completion of the contract by decreeing its specific execution."

The decision of this court in *Price* v. *Lloyd* settles and determines nearly every controverted question presented in the case at bar. It is true in that case plaintiff relied upon an alleged promise to convey the property by gift, while here it is claimed there was a contract of purchase. The difference, however, is immaterial. Under the statute of frauds invoked by plaintiff (Comp. Laws Utah 1917, § 4874) part performance in case of a verbal agreement is as necessary in a contract to sell as it is in a promise to give (36 Cyc. 681).

In Pomeroy, supra, at page 185, it is said:

"Slight and temporary improvements or trivial outlays, however, do not raise an equity in favor of the donee to have the gift enforced; nor does the court grant its specific remedy when the expenditure was not made in consequence of the gift, nor, it seems, when the donee has been compensated for his outlays by rents and profits already received from the land."

In Cyc., supra, at page 670, speaking to the same point, the author says:

"Slight expenditures for repairs, and the like, such as might naturally be made by any person as incident to an occupation of the premises, are insufficient."

At page 180, Pomeroy, supra, the author speaking of the essential attributes of improvements, says:

"The improvements must be of a kind which would naturally and reasonably be done under a contract, so as to indicate the existence of a contract to account for them; *they must be made on the faith of the contract and must of course be subsequent to it.*" (Italics ours.)

In the case at bar the trial court found that the verbal contract relied on was entered into in September, 1916. The house was then completed and ready for occupation, so that the work done by defendant, such as hauling gravel, digging cellar, etc., upon which he relies as part performance must have been done before the making of the alleged contract.

The defendant calls our attention to numerous cases relating to the question of part performance all of which we have carefully examined and find no reason to change our views as foreshadowed in the preceding pages of this opinion. In fact the cases referred to in many instances strongly support the plaintiff's contention. Among the cases relied on by defendant we mention the following: *Parkhurst v. Van Cortlandt,* 1 Johns. Ch. (N. Y.) 273; *Lowry v. Tew,* 3 Barb. Ch. (N. Y.) 413; *Karren v. Rainey,* 30 Utah, 7, 83 Pac. 333; *Kenyon v. Youlen,* 53 Hun. 591, 6 N. Y. Supp. 784; *Freeman v. Freeman,* 43 N. Y. 34, 3 Am. Rep. 657; *Young v. Montgomery,* 28 Mo. 604; *Ford v. Steele,* 31 Neb. 521, 48 N. W. 271; *Newkirk v. Marshall,* 35 Kan. 77, 10 Pac. 571; *Vanduzer v. Christian,* 30 Ga. 336; *Chandler v. Neil,* 46 Kan. 67, 26 Pac.

470; *Brown* v. *East*, 5 T. B. Mon. (Ky.) 405; *Jomsland* v. *Wallace*, 39 Wash. 487, 81 Pac. 1094.

In view of the law applicable to the facts of the present case, we are forced to the conclusion that the findings of the court below in favor of the defendant are against the clear preponderance of the evidence, and that findings and decree quieting plaintiff's title to the property in controversy, and restoring to him possession thereof, with damages at the rate of $25 per month from and after June 23, 1920, should be made and entered in accordance with the prayer of plaintiff's complaint.

It is therefore ordered that the cause be remanded with directions to the trial court to make and enter findings and decree in favor of plaintiff in accordance with the views herein expressed. Respondent to pay the costs of appeal.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.