KATHERINE HIGGINS and Another, Plaintiffs, *v.* EXCHANGE NATIONAL BANK and Another, as Executors, etc., of KATE C. HIGGINS, Deceased, and Others, Defendants.

Supreme Court, Cattaraugus County, December 1, 1931.

*Locke, Babcock, Hollister & Brown,* for the plaintiffs.

*Hastings, Hornburg & Andrews,* for the defendants, executors.

*Coudert Brothers,* for the defendants City Bank Farmers Trust Company and another, as trustees, etc.

HORTON, J.   This action is brought by plaintiffs, children and heirs at law of Orrin T. Higgins, deceased, for specific performance of a contract made by his mother, Kate C. Higgins, deceased, widow of Frank W. Higgins, former Governor of the State of New York, in which it is alleged that Mrs. Higgins, in consideration of the transfer by Orrin T. Higgins of his two-ninths interest in the residuary estate of his father, Frank W. Higgins, to the Higgins Company, a corporation organized to manage and liquidate said residuary estate, orally agreed that she would so dispose of her property by will that said Orrin T. Higgins would receive one-third of it, or, in case he should predecease her, then that his share should go to his children, the plaintiffs herein.   Mrs. Higgins at the time of the alleged agreement had three children living, to wit, Orrin T. Higgins, Josephine Higgins and Frank Harrison Higgins. This contract is alleged to have been made in or about the month of November, 1908.   Orrin T. Higgins died September 12, 1912. Kate C. Higgins died May 24, 1929, leaving a last will and testament, by the terms of which she gave to each of the plaintiffs the sum of $5,000 out of an estate of approximately $750,000.   On July 2, 1930, proof of claim asking for the performance of the above contract was filed with the executors, and upon its rejection this action was brought against the executors and trustees of the Kate C. Higgins estate, the executors of the estate of a deceased daughter, Josephine, and trustees of Josephine's two children, Beatrix Hovelaque and Pierre Hovelaque, and against Frank Harrison Higgins, son of Kate C. Higgins.

Plaintiffs' evidence as to the making of the alleged contract was given by Elizabeth Higgins, widow of Orrin T. Higgins and mother

of the plaintiffs, and by Johnson Bransford, brother of Elizabeth Higgins. This evidence is not disputed except inferentially by the testimony of Allan B. Williams. The defendants, however, insist that under well-established authorities the proof of the making of the contract must be deemed insufficient, because it was given by interested witnesses, one of whom was hostile to the testatrix, and was not the clear, convincing proof that is required by the authorities. Defendants' argument might seem impressive to the casual reader of the transcript of evidence taken upon the trial, not only because of inconsistencies in the evidence given by plaintiffs' witnesses, but because of admitted evidence of considerable unpleasantness between Elizabeth Higgins and testatrix, particularly after the death of Orrin T. Higgins. The court, however, had the opportunity of observing the attitude and conduct, as well as the manner of testifying, of plaintiffs' witnesses throughout the trial, at which they were subjected to searching and exhaustive cross-examination, and is fully convinced of the inherent honesty of the witnesses and of the sincerity of their belief in their statements of what occurred at the conference at which the contract is alleged to have been made. The contract was made under unusual circumstances. For some time Kate C. Higgins had been endeavoring to get her said son to transfer to the Higgins Company his two-ninths interest in his father's residuary estate. A conference at Buffalo was finally arranged. Orrin T. Higgins and his wife came from California to attend this conference; Johnson Bransford came from Tennessee and met Orrin T. Higgins and his wife at Chicago and accompanied them to Buffalo; and Mrs. Higgins and her advisers came to Buffalo from Olean. Orrin T. Higgins was ill with tuberculosis at the time this conference took place, and the plaintiffs' testimony is that on account of his physical condition, he did not want to come east for the conference. It is true that many years elapsed between the time when this conference took place and the trial of the action, but the occasion for the conference, the distance traveled to reach Buffalo, at a time when Orrin T. Higgins was ill, and the fact that the future livelihood of Orrin T. Higgins and his family was at stake, could very well have fixed the events of that conference so clearly in the minds of these witnesses that they could relate with more than usual accuracy what took place after so long a lapse of time.

The defendants claim that the testimony of the plaintiffs is contradicted by one who they say is the only disinterested witness now living of that conference, and by proof of other facts and circumstances which the defendants say discredit this evidence, or at least make it so doubtful that plaintiffs cannot be said to have

sustained the burden of proof. So far as the evidence of the alleged disinterested witness is concerned, the court believes that the statement received in evidence and prepared by him for the purpose of showing that Orrin T. Higgins, and his wife after his decease, received more than their equal proportion of the fortunes of Governor Higgins, without enforcement of the contract claimed by plaintiffs here, was so misleading and partisan that it casts doubt in the court's mind upon that witness' testimony as to the conference of November, 1908. Furthermore, this witness does not directly deny that the conversations leading up to and resulting in this contract took place, but merely says that they were not had in his presence. To the claim that it seems almost incredible that an agreement of this kind should not have been reduced to writing, the answer may well be that, since it was known to Orrin T. Higgins that his mother had at that time made her will whereby she had disposed of her property so as to give each child an equal interest, and as these were dealings between a mother and son, the love and affection between whom was very strong, it is quite natural that the parties would raise no question as to the form of the alleged oral agreement, although the parties might have considered it necessary that the agreement, in so far as it had to do with the transfer of Orrin T. Higgins' interest in the Higgins estate and the formation of the Higgins corporation, should be reduced to writing as was in fact done. The controversies between Kate C. Higgins and Elizabeth Higgins after the death of the latter's husband, Orrin T. Higgins, while regrettable, are not, the court believes, so inconsistent with her testimony presented at the trial as to require the court to discredit her testimony when it is convinced from observation of this and the other witness before it that they were telling the truth. The authorities cited by defendants are largely from cases in which the enforcement of plaintiffs' claim would change the disposition of an estate from those who would naturally be the object of the decedent's bounty to others not related in any way. Such is not the case here. The contract sought to be enforced is one based on even-handed justice. By enforcing it, the heirs of the testatrix, those linked to her by the closest bonds of blood, and of affection as well, for it is undisputed that the relations between the grandmother and plaintiffs were always exceedingly friendly, are treated exactly alike.

Other circumstances bear out the contention that the contract was not only made, but that testatrix intended to, and in fact for a time did, recognize the contract. It appears from her letter to her son, dated November 7, 1908, that by her then existing will she had treated her children alike. This will was in existence at

the time of the conference at which it is claimed the contract was made. If the contract was in fact made, as the court believes it was, it was, of course, unnecessary to draft a new will at that time, or at the time of the final closing of the transaction, for the reason that the then existing will complied fully with the requirements of the contract. This will, with certain codicils thereto not violating the contract, remained in force until after the death of Orrin T. Higgins. After his death the relations between his mother and his wife apparently became more unpleasant than before, as a result of which testatrix, in a moment of pique, annoyance or anger at what she no doubt regarded as the unfair conduct of Elizabeth Higgins, by a new will cut off the children of her deceased son with $5,000 each, whereas, under the revoked will they would have received from $100,000 to $125,000 each. Of course, if there was no legal impediment in the way, the testatrix had the right to do this, even to the extent of visiting upon these grandchildren, whom she loved, what to her seemed to be the sins of their mother. The testatrix was a woman of high character and integrity and, because of this, it is urged that she would have performed the contract if it had been made. Even if the contract had not been made, it would obviously be a most unnatural thing for testatrix to cut off these two grandchildren with a mere pittance solely because of her feeling against their mother, no matter how justifiable her enmity was. She might have provided that the control of their share should be in hands other than their mother's, but it seems to the court that it would be most unnatural for her so drastically to punish innocent children. This situation leads the court, reluctantly, however, because of testatrix's high character, to the view that the children of her deceased son were so markedly discriminated against solely because of testatrix's feeling against their mother, and, if she would so punish the innocent in the absence of a contract, it is not impossible or improbable that she would feel that the conduct of the mother justified her action, even though the contract had been made. Even though Mrs. Higgins was a woman of high personal integrity, she was also a woman of a dominating disposition and, because of her son's death and his wife's conduct towards her, she may have felt, and perhaps did feel, that she was not bound by the contract or that she was justified in disregarding it. The type of individual who, in the absence of a controlling contract, would discriminate against heirs under the circumstances disclosed here, is the type that would not regard too closely the obligations of a contract when conditions seemed to him or her to have entirely changed. However, the court believes that the contract was not only actually made, but was

observed by the testatrix by her existing will and codicils thereto until after the death of her son, and that the contract then inured under the express terms thereof to the benefit of his children, the plaintiffs herein.

The defendants insist that the testimony offered by plaintiffs to prove the above contract was inadmissible as an attempt to vary by parol evidence the terms of a written contract. As the court views it, there are several answers to this: The first is that the written contract recites: " For a valuable consideration by each to the other in hand paid, the receipt whereof is hereby acknowledged, it is mutually covenanted," etc. The rule is too well settled for argument that parol evidence is admissible to show what in fact was the consideration for an agreement. (See *McCrea* v. *Purmort*, 16 Wend. 460; *Baird* v. *Baird*, 145 N. Y. 659; *Presbyterian Church* v. *Cooper*, 112 id. 517; *Seeley* v. *Osborne*, 220 id. 416.)

In *McCrea* v. *Purmort* (*supra*) the court reviewed the English and American authorities on the subject and said (at p. 473): " Nor is its [a deed's] acknowledgment of a particular consideration an objection to other proof of other and consistent considerations," and quoted with approval (at p. 469) the words of PARKER, Ch. J., in *Wilkinson* v. *Scott* (17 Tyng [Mass.], 249), as follows: "A man is estopped by his deed to deny that he granted or that he had a good title to the estate conveyed; but he is not bound by the consideration expressed; because that is known to be arbitrary and is frequently different from the real consideration of the bargain."

The evidence was offered here for the purpose of showing what the " valuable consideration " mentioned in the contract really was, and is admissible for that purpose. The second answer is that the contract here sued on was separate and collateral to the written agreement entered into by the parties and, as the evidence discloses, the inducing cause thereof. The principle is well stated in Jones Commentaries on Evidence (Vol. 3, p. 2719) that " Where a parol contemporaneous agreement was the inducing and moving cause of the written contract, or where the parol agreement forms part of the consideration for a written contract, and it appears that the written contract was executed on the faith of the parol contract or representations, such evidence is admissible." (See, also, Encyclopedia of Evidence, vol. 9, p. 350; *Juilliard* v. *Chaffee*, 92 N. Y. 529; *Baird* v. *Baird*, 145 id. 659; *Beagle* v. *Harby*, 73 Hun, 310; *Andrews* v. *Brewster*, 124 N. Y. 433.)

As is indicated by Williston in his work on Contracts (Vol. 2, p. 1235): " To differentiate the promises in contracts as they arise, as either collateral or the reverse, is very difficult and sometimes

nearly if not quite impossible." As is further pointed out by the court in *Mitchill* v. *Lath* (247 N. Y. 377, at p. 382): " Where the line between the competent and the incompetent is narrow the citation of authorities is of slight use. Each represents the judgment of the court on the precise facts before it."

In the case at bar the evidence discloses that the consideration for the oral agreement was the execution by Orrin T. Higgins of the written agreement. To that extent the written contract and the oral contract are bound together but the bond is not, in the opinion of the court, sufficiently close to exclude proof of the oral agreement. That the oral agreement is in form collateral to the written agreement is clear on the evidence. That the oral agreement does not contradict the express or implied provisions of the written contract is also clear here. The written contract embodied the obligation of Orrin T. Higgins to convey his interest in his father's estate to the Higgins Company. The oral contract embodied, on the other hand, the obligation of Kate C. Higgins to leave Orrin T. Higgins a share equal to that left his brother and sister in her estate. The two contracts were thus totally unrelated in subject-matter; nor does the oral agreement appear to contain or define in any respect the engagements of the parties under the written contract.

The test as to whether an agreement is collateral and independent is laid down by the court in *Lese* v. *Lamprecht* (196 N. Y. 32, at p. 37) as follows: " In deciding whether a particular promise or agreement is collateral and independent of the principal and written contract it is necessary to determine whether the parties to the written contract intended to include therein all of the promises relating to the subject-matter under consideration.

" Professor Wigmore, in his work on Evidence, says: ' In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation. This test is the one used by the most careful judges, and is in contrast with the looser and incorrect inquiry whether the alleged extrinsic negotiation contradicts the terms of the writing.' (Wigmore on Evidence, § 2430.) "

The circumstances surrounding the execution of the written agreement relied on by the defendants in the case at bar indicate that it was not the intention of the parties to integrate therein the

entire agreement. This is shown first by the fact that from the evidence it is to be supposed that the written agreement was prepared and executed by Kate C. Higgins in advance of the Buffalo conference. The written agreement is dated November 25, 1908, and acknowledged on that day by Kate C. Higgins before "Allan B. Williams, Notary Public, Cattaraugus County, New York." The evidence is undisputed that Kate C. Higgins spent at least the latter part of November 25, 1908, in Buffalo at the conference aforesaid. Also, the written agreement contains no provision regarding the change in the by-laws of the Higgins Company, which change Orrin T. Higgins, at the conference of November twenty-fifth, insisted must be carried out as prerequisite to his executing the written agreement and which change the evidence discloses was, in fact, carried out subsequently by the parties. Finally, in view of the fact that the relationship of the parties to the contract here in question was that of mother and son, the court does not think it unusual that the parties did not integrate in writing their entire agreement.

It seems to the court, therefore, that the written agreement in question was only part of the undertaking between Kate C. Higgins and Orrin T. Higgins; that the agreement on her part not to change her will, in which she had left Orrin T. Higgins a share equal to that of the other children, was an agreement separate from and collateral to the written agreement and the cause inducing Orrin T. Higgins to enter therein. Upon the facts plaintiffs should be allowed to introduce evidence to substantiate their claims as to this.

The defendants insist that the contract is void under the Statute of Frauds, citing section 259 of the Real Property Law, providing that " a contract  *  *  *  for the sale, of any real property, or an interest therein, is void" unless in writing. However, it is the opinion of the court that section 259 must be read in conjunction with section 270 of the Real Property Law. Both sections are contained in article 8 thereof. Section 270 provide as follows: " § 270. Powers of courts of equity not abridged. Nothing contained in this article abridges the powers of courts of equity to compel the specific performance of agreements in cases of part performance."

In the case at bar there was full performance on the part of Orrin T. Higgins when he conveyed to the Higgins Company his interest in his father's residuary estate. He did so, induced by the promise of his mother not to change her will by which she had given Orrin T. Higgins an interest equal to that of his brother and his sister in her estate.

The court believes that the case comes within the application

of the following authorities: *Korminsky* v. *Korminsky* (2 Misc. 138); *Goldstein* v. *Goldstein* (35 id. 251); *Salem* v. *Finney* (127 id. 387); *Miller* v. *Ball* (64 N. Y. 286, 291); *Adams* v. *Swift* (169 App. Div. 802); *Lobdell* v. *Lobdell* (36 N. Y. 326).

In view of the performance by Orrin T. Higgins, pursuant to and in reliance upon the agreement, the court believes that the interposition of the statute would result in injustice and fraud.

The defendants also claim that performance by Orrin T. Higgins did not take the case out of the statute because the acts proved as constituting performance do not point unequivocally to the existence of the contract, citing many authorities such as *Woolley* v. *Stewart* (222 N. Y. 347) and *Burns* v. *McCormick* (233 id. 230). There is no question about the rule that performance must refer unequivocally to the alleged agreement when evidence of such performance is the only evidence of the existence of the agreement. The rule, however, does not apply here, as the oral contract has been abundantly established by evidence independent of and aside from that showing performance thereof. This brings the case clearly within the rule laid down in a very well-considered opinion by SMITH, J., in *Salem* v. *Finney* (127 Misc. 387). In that case the court said (at p. 394): " In the instant case the consideration was performance on the part of the plaintiff of her part of the contract. But it is said that ' not every act of part performance will move a court of equity.' That is of course true, unless the performance was the consideration of the contract. It is also said that ' there must be performance " unequivocally referable to the agreement." ' This would bear rather upon the evidence of the existence of the contract than upon the question of the fulfillment of it. Let there once be established a contract which contravenes no sound public policy, which is not unconscionable, which appeals to the conscience of the court and accords with natural justice, the proposition that the performance must be ' unequivocally referable to the agreement ' becomes of no moment (except as bearing upon the existence of the contract), unless we are prepared to wipe out the doctrine of consideration as being of the essence of a contract. If the intent is where the contract is not shown by competent evidence, clear and convincing, that the mere fact of the performance may not be taken as evidence of the contract unless it is unequivocally referable to the agreement, then the language of the court becomes consonant with the course of the decisions rendered upon this subject." (See, also, Pom. Spec. Perf. Cont. [3d ed.] p. 262.)

Most of the cases cited by the defendants in support of their contention that specific performance is here barred are cases where the performance rendered by the promisee pursuant to the oral

contract involved personal services. It is clear in such cases that, if specific performance is denied, the promisee still has an adequate remedy; namely, an action at law under the theory of *quantum meruit* for the value of the services rendered. (See note in 31 A. L. R. 139; *Ludwig* v. *Bungart*, 48 App. Div. 613; *Banta* v. *Banta*, 103 id. 172.)

In the present case the plaintiffs have no adequate remedy at law in the event specific performance were to be denied, for it would be difficult, if not impossible, to estimate in an action at law the fair and reasonable value of the act of Orrin T. Higgins in conveying his two-ninths interest in the residuary estate of his father. In 25 Ruling Case Law, 589, it is said: " Where the consideration for a promise to devise land is the rendition of services of such a nature or peculiar character that it is impossible to estimate their value to the promisor by any pecuniary standard and there was no intention to measure them by a pecuniary standard, their rendition has been held in a number of cases a sufficient part performance to take the contract out of the operation of the statute. To refuse a specific performance in such case and leave the promisee to such relief as can be obtained by him in an action at law would enable the promisor thereby to perpetrate a fraud under the protection of the statute of frauds."

It is also urged that Elizabeth Higgins was not a competent witness under section 347 of the Civil Practice Act to testify to the agreement between Kate C. Higgins and Orrin T. Higgins, and that there is a defect of parties defendant in that the two Hovelaque children, beneficiaries of the trust of which the defendants City Bank Farmers Trust Company and Herbert Adams Gibbons are trustees, were not joined as parties. Elizabeth Higgins, however, is not in the court's opinion interested in the event of this action within the meaning of section 347 of the Civil Practice Act. The contract was made between Orrin T. Higgins and the decedent. Elizabeth Higgins joined in it only for the purpose of extinguishing her inchoate right of dower. She was not the inducing cause of the contract in any sense, acquired no rights under it and could not bring suit to enforce it. The plaintiffs here derived their interest through the contract, not through their mother. The two children of Josephine Higgins Hovelaque, residuary legatees under the will of Kate C. Higgins, are not necessary parties to this action. This is a claim against an estate. The legatees and parties interested under the will are represented by the executors and trustees and are bound by the judgment without being made parties to the action. (See *Corcoran* v. *Kennedy*, 177 App. Div. 63; *Riggs* v. *Cragg*, 89 N. Y. 479, 488.)

The plaintiffs ask in this action that they be awarded one-third of the estate of Kate C. Higgins in accordance with the contract above set forth. The court finds from the evidence submitted that it was the intention of the parties to the contract that this one-third was to be of the residuary estate remaining after the payment of debts, funeral and administration expenses, including transfer taxes, bequests other than those for the benefit of her children and grandchildren, and also excepting the devise of the family homestead in Olean, and directs judgment of specific performance of such contract. This determination carries out the intention of the parties thereto as found by the court, and in addition recognizes the claims of the natural recipients of the bounty of the testatrix, gives equal treatment to all of her children and their representatives, and seems to the court to be in consonance with the principles of justice and equity.