269 P.2d 278

In re ROTH'S ESTATE.

ROTH v. ROTH.

No. 8040.

Supreme Court of Utah.

April 16, 1954.

Elliott R. Wight, A. O. Tangren, Salt Lake City, for appellant.

Harvey A. Sjostrom, Logan, for respondent.

WOLFE, Chief Justice.

George F. Roth died intestate in Providence, Cache County, Utah, in 1935, leaving as his heirs two sons, who are the appellant, and the respondent in this action, and a widow who was his second wife and a stepmother of the sons. Upon probate of the deceased's estate, the widow was given a life estate in the real property which con-

sisted of a house and lot in Providence and the sons were given the remainder in said property in equal shares. The personal property was distributed equally among the three heirs.

The widow died in 1951. About one year after her death, the appellant, alleging that it was impractical to divide the real property into equal parcels, petitioned the court below to appoint a referee to sell the property pursuant to law and to divide the proceeds therefrom equally between the respondent and himself. He also alleged that the respondent had appropriated to his own use all the rents, issues and profits from the property since the death of their stepmother, and requested that the court require him to account to the appellant for one-half of the same. To the petition of the appellant, the respondent answered and counterclaimed contending that prior to the death of their stepmother, the appellant and his wife orally agreed to sell him his interest in the property for the sum of $900, and that pursuant to that contract the respondent went into possession of the property, made valuable improvements thereon and paid $400 of the purchase price. Respondent offered to pay the balance of $500 and prayed that the appellant and his wife be required to specifically perform their part of the oral agreement.

The trial court, sitting without a jury, found that on May 27, 1949, an oral agreement was entered into whereby the appellant and his wife agreed to sell his interest in the property to the respondent for $900, and that the latter paid him $400 of the purchase price; that on July 27, 1951, soon after the death of the stepmother, the respondent notified appellant that he was willing and able to pay him the $500 balance of the purchase price upon his executing a quitclaim deed to his interest in the property, but that the appellant and his wife refused and still refuse to perform their part of the agreement. The court denied the appellant the relief sought in his petition and ordered him and his wife to execute and deliver to the respondent a quitclaim deed to the property upon the payment to them of $500, plus interest from May 27, 1949, to July 27, 1951, when the respondent tendered the $500 balance.

The main contention of the appellant is that the evidence fails to establish the existence of an oral agreement between the parties for the sale and purchase of the property, and that if there was such an agreement, there was not sufficient part performance of it to satisfy the statute of frauds, sec. 25-5-3, Utah Code Annotated 1953, providing:

"Every contract for the leasing for a longer period than one year, or for the sale, of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party by whom the lease or sale is to be made, or by his lawful agent thereunto authorized in writing."

That statute is subject, however, to sec. 25-5-8, U.C.A.1953, providing:

"Nothing in this chapter contained shall be construed to abridge the powers of courts to compel the specific performance of agreements in case of part performance thereof."

We think the evidence establishes that there was an oral agreement and that the respondent sufficiently performed it to satisfy the statute of frauds. The appellant testified that on the afternoon of the day of their father's funeral, he and the respondent discussed the sale of the property and the latter agreed to purchase the appellant's interest for one-half of the appraised value of the property. The property was subsequently appraised at $1,800. Payment, however, was not to be made by the respondent until their stepmother died as she was to be given a life estate in the property. Thereupon the respondent, who was then living in Salt Lake City, moved to Providence and commenced living with his stepmother on the property. There were no further discussions about the property by the parties until the early part of May, 1949, when the appellant and his wife were visiting the respondent in Providence. At that time the appellant's wife, according to the respondent, privately told him that her husband had been seriously ill and that they had incurred heavy medical and hospital expenses, and she asked whether he could "help them out." The respondent told her that he had certain building and loan stock which he thought he could liquidate and apply the proceeds on the obligation. In about two weeks, on the 27th day of May, 1949, she returned to Providence and obtained $400 from the respondent, giving him a receipt therefor which reads as follows:

"May 27, 1949

"Received of Albert Roth
"Four Hundred and no/100 Dollars
"$500.00 Balance Due
"Geo Roth
"By Janie E. Roth"

Respondent admits, however, that although Mrs. Roth signed her name on the receipt, he wrote in the amount and the words, "$500.00 Balance Due."

The next discussion about the property occurred after the funeral of the stepmother in 1951 at which time the respondent expressed a present inability to pay the balance, but finally decided to mortgage the property to raise the necessary money to complete payment. He subsequently tendered $500 to the appellant who refused to accept it, and commenced this action against the respondent.

The respondent's counterclaim for specific performance being in equity, we may review the facts as well as the law. Const.Utah, Art. VIII, Sec. 9; Sec. 78-2-2, U.C.A.1953. While the trial court found that the oral agreement between the parties was entered into on May 27, 1949,

at which time the respondent paid the appellant's wife four hundred dollars, we think the evidence establishes that the agreement was actually made on the day of the father's funeral in 1935. The appellant's own testimony supports such a conclusion. Contrary to the appellant's contention, the contract was definite, certain and fair, as is required before courts of equity will specifically enforce such agreements. Hargreaves v. Burton, 59 Utah 575, 206 P. 262, 33 A.L.R. 1481. The purchase price was to be one-half of the value of the property as determined by the probate court appraisers. Payment was to be made at the death of their stepmother. It is true that there was no agreement for the payment of interest by the respondent, but that fact does not, of course, make the contract any less binding.

▮ The respondent moved from Salt Lake City to Providence in 1935 and went into possession of the property where he has remained ever since, paid nearly one-half of the total purchase price, and made valuable improvements upon the property at a cost of about $700, consisting of a new roof on the house, a hot water system in the house, linoleum in two rooms, repairs to the barn roof, and planting lawn and shrubs in the yard. It is true, as appellant argues, that the acts of part performance must be exclusively referable to the contract in that the possession of the party seeking specific performance and the improvements made by him must be reasonably explicable only on the postulate that a contract exists. Price v. Lloyd, 31 Utah 86, 86 P. 767, 8 L.R.A.,N.S., 870; Hargreaves v. Burton, supra; Ravarino v. Price, Utah 260 P.2d 570. The reason for such requirement is that the equitable doctrine of part performance is based on estoppel and unless the acts of part performance are exclusively referable to the contract, there is nothing to show that the plaintiff relied on it or changed his position to his prejudice, so as to give rise to an estoppel. Price v. Lloyd, supra; Comment Note in 90 A.L.R. 231, 232. See also 75 A.L.R. 650 and 117 A.L.R. 939 for discussion on the relation between the doctrines of estoppel and part performance. This requirement need not give us pause in the instant case. While it might be possible to explain the taking of possession and the making of improvements on some other basis than that a contract existed, since the respondent was the owner of an undivided one-half interest in the property subject to a life estate in his stepmother, took possession with her consent, and the improvements which he made probably did not amount to more than a reasonable rental over the 16 years that he occupied the premises (although there is no evidence in the record to that effect), Price v. Lloyd, supra, we think that inasmuch as the appellant's own testimony establishes an oral agreement on his part to sell his interest in the property to his brother we are warranted in concluding that the acts of part performance were done in reliance on that

contract. In Jones v. Jones, 333 Mo. 478, 63 S.W.2d 146, 90 A.L.R. 219, and in Higgins v. Exchange Nat. Bank, 142 Misc. 69, 253 N.Y.S. 859, it was held that where the existence of the oral contract is established by an admission of the party resisting specific performance or by competent evidence independent of the acts of part performance, the requirement that the acts of part performance must be exclusive referable to the oral contract is satisfied. Corbin on Contracts, sec. 430, approves the holding of those cases.

■ Appellant next contends that the findings of the lower court are insufficient and will not support a decree of specific performance. We agree. The court made no findings that the respondent took possession of the property and made improvements thereon, nor that those acts were done in reliance upon the oral agreement. However, as we have pointed out, the evidence justifies findings to that effect and the evidence as a whole will support a decree for specific performance.

■ Lastly, appellant contends that the trial judge, after the case had been submitted to him and court adjourned, improperly changed the decision which he had orally announced in open court at the conclusion of the trial. A complete answer to this contention is found in the case of McCollum v. Clothier, Utah, 241 P.2d 468, where we said, speaking through Mr. Justice Crockett, that oral antecedent expressions of opinion by a trial judge inconsistent with the findings, conclusions and decree ultimately entered by him in writing, do not affect the final judgment.

■ The findings of fact, conclusions of law and decree entered by the lower court are set aside, and the case is remanded with instructions to enter findings, conclusions and a decree consistent with this opinion granting specific performance. Each party to bear his own costs.

McDONOUGH, CROCKETT, HENRIOD and WADE, JJ., concur.