Vardon WOOLSEY and Clea Woolsey, his
wife, Plaintiffs and Appellants,

v.

Ellen B. BROWN, Defendant
and Respondent.

No. 13884.

Supreme Court of Utah.

Aug. 20, 1975.

Joseph S. Kowlton, Salt Lake City, for
plaintiffs-appellants.

Heber Grant Ivins, American Fork, for
defendant-respondent.

MAUGHAN, Justice:

This is an action for specific perform-
ance of an oral agreement to purchase real
property, in which plaintiffs have alleged
full performance and in return seek
a conveyance. Defendant counterclaimed.
Judgment was rendered in favor of de-
fendant, which included $9,717, as back
rent, plus $12.50 per day prospectively.
We reverse.

There is no serious dispute that the par-
ties entered into an oral agreement, on
April 12, 1961, under the terms of which
plaintiffs were to make a down payment
and assume the mortgage payments to
Walker Bank. There is a factual disagree-
ment as to the precise terms concerning
the down payment. The oral contract was
sufficiently definite; there was merely a
controversy concerning one of the terms of
the agreement, and it was the responsibility
of the trial court to determine which ver-
sion was in fact correct.

According to defendant, she and her
husband (now deceased), who was a joint
tenant of the realty, agreed orally to sell
the home to plaintiffs on the following
terms: (1) a down payment of $1,337;
however, defendant's husband represented
that he would give plaintiffs credit for the
rent they had paid for the previous nine
months in the sum of $630, leaving an un-
paid balance of $707; (2) plaintiffs were
to assume the mortgage payments of $81
per month. The mortgage payments were
sufficient to cover principal, interest, prop-
erty taxes, and insurance.

According to defendant, the balance of
$707 was to be paid within 30 days; other-
wise, plaintiffs were to pay the $630, for

which they had been given credit. Plaintiffs vigorously deny the 30-day time limitation, and their version is supported by the two receipts issued by defendant.

Pltf's Exhibit No. #2

No. Case No. 39566          April 12  1961

Received from Vardon Woolsey
Four Hundred Seventy and $\frac{no}{100}$ ——— Dollars
As Down payment on house in A.F.
#9 Roosevelt Ave.    Balance $237.$\underline{oo}$
$470 $\underline{oo}$     Ellen B. Brown

★WILSON JONES CO U.S.A

Pltf's Exhibit No. #3

No. Case No. 39566    April 27  1962

Received from Vardon Woolsey
One Hundred Eighty Eight    Dollars.
Payment on house in A.F. 9 Ros. Ave.
          237.00
          188.00
$188 $\underline{oo}$  49.00  Ellen B. Brown

★WILSON JONES CO U.S.A

---

The issuance of the second receipt one year after the first payment on the down payment appears to refute defendant's version that the full down payment was to be made within 30 days. The receipt further indicates that the agreement required a total payment of $707 and that there was an unpaid balance of $49.

In the spring of 1966, defendant's husband died and she contacted plaintiffs and ordered them verbally to vacate the house. Plaintiffs sought legal assistance and their attorney prepared a contract, which defendant refused to execute. Plaintiffs sent a cashier's check in the amount of $49 to defendant, which she refused to negotiate, and it was found in the records of defendant's former legal counsel at the time of the trial.

Pltf's Exhibit No. #4    PURCHASER'S RECEIPT
Case No. 39,566          RETAIN FOR YOUR RECORDS

AMERICAN FORK, UTAH April 20 1966 N° 41155

Ellen B Brown                          $ 11.

NOT GOOD FOR MORE THAN $300.00

COPY OF PERSONAL MONEY ORDER DRAWN ON    Vardon Woolsey

final down payment on place
in american fork, ut                     fork, Utah   NEGOTIABLE

The Customer in buying this personal money order form with the number and amount thereon, appoints himself as the date, payee, drawer by his failure to do so. signature and address and assumes responsibility for all events made possible

PLEASE FILL IN "PAY TO THE ORDER OF" LINE ON MONEY ORDER AND SIGN WITH ADDRESS—IMMEDIATELY.

This check, which was refused, again reflected the agreement as understood by plaintiffs. Significantly, defendant's counsel sent a letter, dated April 29, 1966, to plaintiffs which stated that the real estate contract prepared by plaintiffs' counsel did not "reflect the agreement of the parties"; there was no denial that an agreement existed.[1] Defendant's counsel, with her approval, sent a letter to plaintiffs stating that defendant was willing to complete the sale on the following conditions: (1) Plaintiffs were to pay the balance of the down payment together with interest; (2) plaintiffs were to pay special improvement liens; (3) plaintiffs were to pay the expenses to terminate the joint tenancy of defendant with her deceased husband.

Plaintiffs, through their counsel, responded in a letter dated May 5, 1966, that they would be happy to pay interest on the balance of the down payment, and they requested that the sum required be computed and submitted to them. Plaintiffs cited their willingness to pay any special improvement assessment; and stated that neither a demand nor information, in that regard, had been given to them. They explained they had believed they had a reasonable time to pay the balance of the down payment, that no demand had been

made; and they had been waiting for defendant to present them with a written contract of sale. Plaintiffs declined to pay the costs to remove the joint tenancy; since they were not responsible for the death of defendant's husband, but they expressed a willingness to accept a warranty deed from defendant, the surviving tenant.

According to defendant, she repudiated the oral agreement in the spring of 1966; yet, thereafter, she sent a notice of a special improvement assessment to plaintiffs for curb and gutter, which they paid in the sum of $656.05. Furthermore, defendant permitted plaintiffs to remain in possession, and they continued to make the mortgage payments. Subsequently, a fire occurred, and defendant applied the $1,200 proceeds from the insurance to the mortgage indebtedness. The fire insurance was cancelled and defendant procured and paid for a new policy in the sum of $68; the term of the policy was for three years from November 18, 1970 to 1973. Defendant neither informed plaintiffs of the cancellation nor demanded that they pay the insurance. Plaintiffs continued to pay the same mortgage payments which were sufficient to provide a reserve fund for insurance.

1. The real estate contract submitted required the seller to pay the real estate taxes and insurance, while, in fact, the mortgage payments covered these expenses.

The mortgage indebtedness was paid in August, 1973, a date sooner than had been contemplated by the parties, since the fire insurance proceeds had been applied to this fund. The mortgagee returned to defendant the sum of $183.58, which had been in a reserve account to discharge property taxes and insurance. Defendant subsequently paid the property taxes in November, 1973, in the amount of $135.31. In October, 1973, after the mortgage had been discharged by plaintiffs, defendant served upon them a notice to quit. Plaintiffs initiated this action for specific performance. At the termination of the trial, plaintiffs, although contesting they owed an additional $630 on the down payment, tendered the amount to preserve their interest in the home.

Based on the foregoing facts, the trial court found that plaintiffs had not sustained their burden to prove an enforceable oral contract of sale, which had been sufficiently performed to remove it from the statute of frauds,[2] and entitle them to a decree of specific performance.[3] The trial court concluded as a matter of law that plaintiffs had failed to establish the material terms of an oral contract of sale. The evidence clearly preponderates against such a finding.

Plaintiffs were initially tenants paying rent in the amount of $70 per month. After the oral agreement, they proceeded to pay the mortgage payments in the amount of $81 per month which covered property taxes and insurance. They remained in possession and made improvements to the property including carpeting the home and installation of new bathroom fixtures. They discharged a special improvement assessment. They paid all but $49 of the down payment, as evidenced by the receipts issued by defendant. All these acts upon which they rely are exclusively referable to the contract, and they are not reasonably

explicable upon any other basis than the existence of a contract.[4]

This action bears a certain similarity to *Christensen v. Christensen*,[5] wherein it was urged that the terms of the oral contract were too uncertain to entitle the plaintiffs to specific performance. The uncertainty was the time of payment of the purchase price, which was not set by the terms of the contract. This court observed that, although in cases of this type the law implies payment within a reasonable time, a court of equity will hold that defendant has waived any defense as to uncertainty of time of payment or protraction thereof, beyond what would otherwise be deemed a reasonable time for payment, by accepting other acts of performance rendered under the contract. There we expressed awareness of the principle that a plaintiff seeking specific performance of an oral contract must establish the terms thereof with a greater degree of certainty than is required in an action at law, and he must show a clear mutual understanding and a positive agreement of both parties to the terms of the contract. We there held the facts of the case would be inconsistent with any other conclusion than that the parties had a definite understanding with respect to the exchange of the real property such as to invoke the offices of equity in its enforcement.

▐ In the instant action, plaintiffs proceeded with performance for 12 years under an oral agreement for the sale of real property. Defendant neither demanded the remaining balance nor did she respond by stating the sum she sought, when so requested by plaintiffs' counsel; such facts are sufficient to support a waiver of timely payment of the balance. Defendant continued to accept performance including a demand that the special improvement assessment be paid, with which plaintiffs complied. As observed in *Christensen v.*

2. Sec. 25–5–3, U.C.A.1953.

3. Sec. 25–5–8, U.C.A.1953.

4. *In re Roth's Estate*, 2 Utah 2d 40, 269 P. 2d 278 (1954).

5. 9 Utah 2d 102, 339 P.2d 101 (1959).

*Christensen,* the facts of this case would be inconsistent with any other conclusion than that the parties had a definite understanding, which equity will specifically enforce. Upon payment of the $49 balance plus the difference ($19.73) between the refund by the mortgagee to the defendant and the cost of the insurance and 1973 property taxes by plaintiffs, defendant is to deliver her conveyance.

Equity will not permit a party to accept performance for many years and then claim terms contrary to the evidence, as a basis to substantiate an assertion of indefiniteness, and thus avoid specific performance.

The facts and acts of partial performance in *Holmgren Bros. v. Ballard, et al.,*[6] are completely distinguishable from those here presented.

Reversed and remanded, with instructions to render judgment in accordance with this opinion.

ELLETT and CROCKETT, JJ., concur.

TUCKETT, Justice (dissenting).

I respectfully dissent.

The decisions of this Court have laid down the rule that a contract must be complete and certain in its terms before specific performance can be decreed. The case of *Price v. Lloyd*[1] enunciated the rule that courts of equity will not specifically enforce any contract unless it is complete and certain, in which decision the court quoted from Pomeroy on Specific Performance of Contracts (Second Edition), Section 145, as follows:

> This element of completeness must exist in every contract which can be specifically enforced, whatever be its external form, whether written or verbal, whether embodied in the memorandum required by the statute of frauds, or rendered obligatory by part performance, or by any other act which may obviate the prohibitions of that statute. .

The rule enunciated by that decision and by other decisions of this court may be summarized as laying down the rule that a contract will not be enforced unless the terms are clear, certain, and unambiguous, and that nothing is left to conjecture or to be supplied by the court.[2] In my view, the terms of the oral contract involved in these proceedings are not so clear and certain as to compel specific performance and thus avoid requirements of the statute of frauds. This is not a case where parties went into possession and made valuable improvements on the land.

Under the terms of the oral contract as approved by the majority the plaintiffs succeeded to the ownership of the home owned by the defendant by making a small down payment, the amount of which and its due date were the subject of conflicting evidence adduced at the trial, and the paying off of the mortgage on the premises. The contract contained no provision for the payment of interest, insurance, taxes, nor the type of conveyance required to complete the sale. Under the terms of agreement as upheld by the majority, the plaintiffs as buyers are in a more favored position than had they signed the usual real estate purchase agreement commonly used in the area. Defendant remained liable to pay the note and mortgage, but the plaintiffs did not agree to assume and pay that obligation. The contract was also advantageous to the plaintiffs inasmuch as there was no provision for forfeiture in the event of a breach of its terms.

A circumstance which tends to support the trial court's finding that the contract in question was not specifically enforceable by reason of its uncertainty and vagueness is the evidence that in 1966 the plaintiffs,

---

6. 534 P.2d 611 (1975).

1. 31 Utah 86, 86 P. 767.

2. *Hargreaves v. Burton,* 59 Utah 575, 206 P. 262; *Campbell v. Nelson,* 102 Utah 78, 125 P.2d 413; *Holmgren Brothers, Inc. v. Ballard,* Utah, 534 P.2d 611; *Ravarino v. Price,* 123 Utah 559, 260 P.2d 570; *Marti v. Ludeking,* 193 Iowa 500, 185 N.W. 476.

through their counsel, proffered to the defendant a proposed written contract the terms of which were in variance with the terms of the oral agreement they testified to at the trial. I am of the opinion that the plaintiffs have failed to sustain their burden of showing there was a meeting of the minds and that a definite and certain contract of sale had been entered into.

I would affirm except as to the judgment entered for damages and I would remand for redetermination of the amount of the award to the defendant upon the amount of $81 per month as the reasonable rental value.

HENRIOD, C. J., concurs in the dissenting opinion of TUCKETT, J.